# United States Court of Appeals for the Federal Circuit

2006-1279
(Serial No. 78/212,751)

IN RE BAYER AKTIENGESELLSCHAFT

Michael L. Lovitz, Connolly Bove Lodge & Hutz LLP, of Wilmington, Delaware, argued for appellant. With him on the brief were Stanley C. Macel, III, and Jennifer Fraser.

Nancy C. Slutter, Associate Solicitor, United States Patent and Trademark Office, of Arlington, Virginia, argued for the Director of the United States Patent and Trademark Office. With her on the brief were John M. Whealan, Solicitor, and Robert J. McManus, Associate Solicitor.

Appealed from: United States Patent and Trademark Office, Trademark Trial
and Appeal Board

# United States Court of Appeals for the Federal Circuit

2006-1279
(Serial No. 78/212,751)

IN RE BAYER AKTIENGESELLSCHAFT

_____

DECIDED: May 24, 2007
_____

Before NEWMAN, SCHALL, and MOORE, <u>Circuit Judges</u>.

Opinion for the court filed by <u>Circuit Judge</u> MOORE. Dissenting opinion filed by <u>Circuit Judge</u> NEWMAN.

MOORE, <u>Circuit Judge</u>.

Bayer Aktiengesellschaft (Bayer) appeals the Trademark Trial and Appeal Board (Board) ruling that the proposed mark ASPIRINA is merely descriptive for analgesic goods. <u>In re Bayer Aktiengesellschaft</u>, Serial No. 78/212,751 (TTAB Mar. 17, 2006) (<u>Final Decision</u>). Because the Board's ruling is supported by substantial evidence, we affirm.

## BACKGROUND

On February 10, 2003, Bayer filed an intent-to-use application under 15 U.S.C. § 1051(b)(1) to register the mark ASPIRINA in connection with analgesic goods. The examining attorney initially refused registration on the grounds that the mark is merely descriptive, or alternatively, deceptively misdescriptive, of Bayer's goods. In support of this refusal to register the mark, the examining attorney found that ASPIRINA is the Spanish word for aspirin and provided an online dictionary definition that equates ASPIRINA with aspirin. The examining attorney also considered online evidence

obtained from GOOGLE search engine results showing the descriptive nature of the term including a translation of Bayer's aspirina.com Spanish-language website. Bayer responded by asserting that ASPIRINA was a coined term with no known meaning in English or any other language. Bayer also asserted that the translation tool used by the examining attorney improperly translated ASPIRINA as aspirin without noting that Bayer was the origin of the goods and that Bayer was working with GOOGLE to resolve this translation "error." Bayer provided extensive evidence of foreign registration of ASPIRINA to the examining attorney to demonstrate that consumers, including Spanish-speaking consumers, understand ASPIRINA to indicate that Bayer is the source of particular analgesic products.

The examining attorney issued a final refusal to register ASPIRINA on the ground that the term is merely descriptive of analgesic products to the relevant consumers. The examining attorney cited numerous story excerpts from a NEXIS database search in which aspirin appeared as the definition of ASPIRINA and two online dictionaries which both equated the term ASPIRINA with aspirin in support of this rejection. The examining attorney also noted that "[t]he foreign equivalent of a merely descriptive English word is not registrable. It too is merely descriptive." Bayer then submitted an unsuccessful request for reconsideration with its own dictionary evidence and appealed to the Board.

After briefing and oral argument, the Board rendered a decision on December 1, 2005, affirming the examining attorney's refusal to register ASPIRINA for use in connection with analgesics. The Board considered the evidence of record in light of the history relating to the term aspirin, which has long since become a generic term in this

country for the class of analgesic goods that consist of a white crystalline compound of acetyl salicylic acid.[1]  Final Decision, slip. op. at 7-8 (citing Bayer Co. v. United Drug Co., 272 F. 505 (S.D.N.Y. 1921)).  The Board concluded that consumers will view ASPIRINA as merely a variation or misspelling of the generic term aspirin and determined that the terms are close in sound, appearance, and meaning.  Id. at 8-9.  The Board also found that ASPIRINA immediately conveys the impression that Bayer's analgesics are aspirin-based products.  Id. at 9.  The examining attorney asserted before the Board that the Spanish word ASPIRINA translates to aspirin in English.  The Board declined to engage in a foreign equivalents analysis given its finding that the record demonstrates that ASPIRINA is a merely descriptive variation of aspirin.  Id. at 8.

Bayer timely appealed this decision.  This court has jurisdiction under 28 U.S.C. § 1295(a)(4)(B).

## DISCUSSION

Section 2(e)(1) of the Lanham Act precludes registration of a mark that, "when applied to the goods of the applicant, is merely descriptive of them."  15 U.S.C. § 1052(e)(1) (2006).  A term is merely descriptive if it immediately conveys knowledge of a quality, feature, function, or characteristic of the goods or services with which it is used.  In re Gyulay, 820 F.2d 1216, 1217 (Fed. Cir. 1987).  Descriptiveness of a mark is not considered in the abstract.  Rather, it is considered in relation to the particular goods for which registration is sought, the context in which it is being used, and the possible significance that the term would have to the average purchaser of the goods because of the manner of its use or intended use.  See In re Abcor Dev. Corp., 588 F.2d 811, 813-

---

[1]     The issue of whether ASPIRINA is a generic term was not before the Board, Final Decision, slip op. at 2 n.2, and likewise is not before this court.

14 (CCPA 1978); see also In re MBNA Am. Bank N.A., 340 F.3d 1328, 1332 (Fed. Cir. 2003). The examining attorney has the burden to establish that a mark is merely descriptive.

The determination that a mark is merely descriptive is a factual finding, and this court reviews the Board's fact finding for substantial evidence. In re MBNA, 340 F.3d at 1332; see In re Oppendahl & Larson LLP, 373 F.3d 1171, 1173 (Fed. Cir. 2004) (stating that determining a mark's placement on the fanciful-suggestive-descriptive-generic continuum is a question of fact). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938). The issue before us is whether, upon review of the record as a whole, substantial evidence supports the Board's finding that ASPIRINA is merely descriptive as applied to Bayer's analgesic products.

## I.

Evidence that a term is merely descriptive to the relevant purchasing public "may be obtained from any competent source, such as dictionaries, newspapers, or surveys." In re Bed & Breakfast Registry, 791 F.2d 157, 160 (Fed. Cir. 1986); see In re Dial-A-Mattress Operating Corp., 240 F.3d 1341, 1344-45 (Fed. Cir. 2001) (stating that competent sources to show the relevant purchasing public's understanding of a term or phrase include dictionary definitions, trade journals, newspapers, and other publications). In this case, the record contains a variety of evidence including:

- Four dictionary definitions of ASPIRINA or aspirin and four Spanish/English translations of ASPIRINA and aspirin;

- GOOGLE search results showing the top ten "hits" for ASPIRINA;

- Bayer's webpage <u>aspirina.com</u> in both Spanish and English (translation from Spanish to English performed using GOOGLE's free translation software);

- Numerous story excerpts identified in a search of the NEXIS database; and

- Copies of the registrations of ASPIRINA in numerous Spanish-speaking countries and an International Registration of ASPIRINA in an additional twenty countries.[2]

We consider each of these categories of evidence in turn after a comparison of the terms ASPIRINA and aspirin with respect to their appearance, sound, and meaning.

## A. Appearance, Sound, and Meaning

Aspirin is generic for analgesics and has been generic for this class of pharmaceuticals over eighty years. <u>See</u> <u>Bayer</u>, 272 F. at 505. In determining whether ASPIRINA is sufficiently similar to aspirin to render it merely descriptive of analgesic goods, the relevant features of the mark are considered including appearance, sound, and meaning. The Board found that ASPIRINA and aspirin are sufficiently close in appearance, sound, and meaning that "[t]he mere addition of the letter 'A' at the end of the generic term 'aspirin' is simply insufficient to transform ASPIRINA into an inherently distinctive mark for analgesics." <u>Final Decision</u>, slip. op. at 8, 11. Substantial evidence supports this finding. The appearance and meaning of ASPIRINA and aspirin are similar. Adding an "a" to aspirin results in virtually no distinction with respect to the visual impressions of the terms. Importantly, both terms will be used in association with

---

[2]     A copy of Bayer's previously filed and now-abandoned application to register the same mark in connection with the same goods was considered by the examining attorney, but the Board did not assign any probative value to this abandoned application in its decision to affirm. <u>Final Decision</u>, slip. op. at 10.

the same analgesic goods in this country.[3]  There are, however, some differences in sound.  ASPIRINA contains four syllables and aspirin contains two or three syllables (depending on how it is pronounced).  ASPIRINA also contains different syllables and the emphasis is on the third syllable for ASPIRINA, whereas the emphasis is on the first syllable for aspirin.  When the mark ASPIRINA is considered as a whole, the significant similarities in appearance and meaning of ASPIRINA and aspirin demonstrate that the Board's finding that ASPIRINA is merely descriptive of analgesic goods is supported by substantial evidence.

Not only did the Board consider the similarities of ASPIRINA and aspirin with respect to appearance, sound, and meaning, it also considered competent sources in the record to determine the relevant purchasing public's understanding of ASPIRINA. We consider these sources below to determine whether the record as a whole provides substantial evidence to support the Board's finding that ASPIRINA is merely descriptive.

### B.  Dictionary Definitions and Translations

#### 1.  Evidence of Record

The evidence of record includes translation results from four online Spanish/English translation websites that demonstrate that ASPIRINA is the Spanish-language equivalent of aspirin.  Translations were obtained from wordreference.com, yourdictionary.com, ultralingua.net, and altavista.com:

- Wordreference.com (Spanish to English):  **aspirina** substantive fermenio aspirin

- Yourdictionary.com (Spanish to English):  aspirina [s.f.] aspirin [n.]

---

[3]  Dictionary evidence that supports the finding that aspirin and ASPIRINA have the same meaning to the relevant consumer is discussed infra in Section I(B). Moreover, it is not disputed that aspirin and ASPIRINA are to be used with respect to the same analgesic goods.

- Ultralingua.net (English to Spanish): <u>aspirin</u> *n.* <*'asp&rin*>: 1. aspirina *s.f.*; (Spanish to English): <u>aspirina</u> *s.f.*: 1. aspirin *n.*

- Altavista.com Babel Fish Translation (English to Spanish): aspirin-aspirina

The record also contains a printout submitted by Bayer from the diccionarios.com website and two paper dictionary entries for ASPIRINA. The website diccionarios.com indicates that ASPIRINA means aspirin and that it is a commercially registered name for a pharmaceutical composition of acetyl salicylic acid. The <u>Vox Everyday Spanish and English Dictionary</u>[4] (2d ed. 2003) translates ASPIRINA to aspirin and indicates that *both* terms are registered marks. The <u>Diccionario de la Lengua Española</u> (2d ed. 2001) entry for ASPIRINA translates as:

> **Aspirina**. (From the German *Aspirin*, Registered Trademark). *f. Med.* White, crystalline solid, constructed by acetyl salicylic acid, which is used as an analgesic and antipyretic. || 2. Caplet manufactured with this substance.

These three dictionary definitions submitted by Bayer both support registration and evidence the descriptive nature of ASPIRINA. All three dictionary definitions submitted by Bayer indicate that ASPIRINA is recognized as a registered mark somewhere in the world, supporting Bayer's assertion that the relevant purchasing public would perceive ASPIRINA as a trademark. However, these three definitions also demonstrate that ASPIRINA means aspirin. Additionally, the <u>Diccionario de la Lengua Española</u> definition for ASPIRINA is strikingly similar to the <u>Webster's Third New International Dictionary</u> (unabridged ed. 1993) definition for aspirin:

> **aspirin**. A white crystalline compound . . . of salicyclic [sic] acid used esp. in tablet form as an antipyretic and analgesic.

---

[4] The <u>Vox Everyday Spanish and English Dictionary</u> is a print version of the dictionary by the same publisher that owns and operates the website diccionarios.com.

*Final Decision*, slip. op. at 8. The <u>Diccionario de la Lengua Española</u> and <u>Webster's Third New International Dictionary</u> definitions show that ASPIRINA and aspirin describe the same crystalline product used as an analgesic, i.e., that they have the same meaning to the relevant purchasing public. Where the evidence of record is conflicting and supports both registration and refusal of registration, the substantial evidence standard of review dictates that we affirm the Board. <u>Hoover Co. v. Royal Appliance Mfg. Co.</u>, 238 F.3d 1357, 1361 (Fed. Cir. 2001).

## 2. Reliability of Online Definitions and Translations

Bayer asserts that the four online definitions and translation results submitted by the examining attorney are unreliable and entitled to little weight because they are inaccurate translations from free automated language translation websites. Bayer also asserts that the inaccurate internet translations and uses of Bayer's mark "are not authorized by Applicant" and are therefore not relevant. Internet evidence is generally admissible and may be considered for purposes of evaluating a trademark. <u>See</u> <u>Retail Serv., Inc. v. Freebies Publ'g</u>, 364 F.3d 535, 544-45 (4th Cir. 2004) (considering online dictionaries and websites as evidence of consumer perception of mark); <u>Savin Corp. v. Savin Group</u>, 391 F.3d 439, 454 (2d Cir. 2004) (consulting website evidence to determine similarity of the marks); <u>see also</u> <u>Trademark Manual of Examination Procedures</u> (TMEP) § 710.01(b) (4th ed.) ("Articles downloaded from the Internet are admissible as evidence of information available to the general public, and of the way in which a term is being used by the public. However, the weight given to this evidence must be carefully evaluated, because the source is often unknown."). Definitions available from an online resource that are readily available and as such capable of being verified are useful to determine consumer perception. <u>See</u> <u>In re Red Bull GmbH</u>,

78 U.S.P.Q.2d 1375, 1377 (TTAB 2006). The online dictionaries and translations as well as the print dictionary evidence that Bayer submitted and the print dictionary cited by the Board provide substantial evidence that ASPIRINA means "aspirin" and that both terms describe the same class of analgesic goods.

### C. Search Engine Reports and Websites

The examiner also cited a GOOGLE search engine report showing the first ten "hits" for ASPIRINA. The report includes a small amount of Spanish text with each of the ten search results and shows both usage of the term descriptively with respect to analgesic pharmaceutical products (e.g., result 4, "En el centenary de l'aspirina 1897-1997") and use of ASPIRINA in connection with Bayer's products and as a Bayer trademark (e.g., results 1-2, Bayer's aspirina.com website; result 8, "Aspirina: El Fármaco del Futuro – Bayer SA Chile"). Results 3 and 9 indicate that ASPIRINA is a registered mark, but do not indicate in what geographical region it is protected by a registration. Most of the GOOGLE search results seem to use the term ASPIRINA as an indicator of Bayer's aspirin product and as a trademark.

Bayer asserts that the list of GOOGLE search result summaries is of lesser probative value than evidence that provides the context within which a term is used. We agree. Search engine results—which provide little context to discern how a term is actually used on the webpage that can be accessed through the search result link—may be insufficient to determine the nature of the use of a term or the relevance of the search results to registration considerations. See In re King Koil Licensing Co., Serial No. 76/565,486, 2006 WL 639160, *2 (TTAB Mar. 2, 2006) (stating that list of internet search results is "not given much weight" because "[t]hese web page excerpts do little to show the context within which a term is used on the web page that could be

accessed by the link"); In re Remacle, Serial No. 75/932,290, 2002 WL 31563187, *2 n.2 (TTAB Sept. 24, 2002). Web-based information that includes greater context for the use of a term, such as a complete webpage that is accessible as a link within the search engine results, will have greater probative value in determining how a term will be perceived. See In re King Koil, 2006 WL 639160, at *2. Because the GOOGLE search report provides very little context of the use of ASPIRINA on the webpages linked to the search report, it is of little value in assessing the consumer public perception of the ASPIRINA mark.

The record includes a translation of the content of Bayer's aspirina.com website, which was the first result listed in the GOOGLE search report. The translation of this page substitutes aspirin for the term ASPIRINA and uses the term aspirin in the generic or descriptive sense for products with acetyl salicylic acid without an indication that it is a registered trademark. Bayer asserts that its aspirina.com website was improperly translated from Spanish to English by the GOOGLE translation software, which replaced the registered trademark in the text of the webpage with the English word "aspirin."[5] Bayer also submitted the Spanish version of a portion of its website and the Board considered this evidence.

Taken together, the GOOGLE search report and the translation of Bayer's aspirina.com webpage contain conflicting evidence with respect to descriptiveness and show that consumers are exposed to ASPIRINA as both (1) a registered trademark associated with Bayer and its analgesic goods and (2) a generic or descriptive term for the analgesic goods.

---

[5] Google has subsequently blocked use of its free translation software on this webpage in response to Bayer's request.

### D. NEXIS Database Search

The record also contains NEXIS database evidence consisting of numerous story excerpts that contain the terms ASPIRINA and/or aspirin. The NEXIS story excerpts also provide mixed results. The references to ASPIRINA include discussions of Bayer and Bayer products, as well as references to ASPIRINA as the foreign term for "aspirin."

The <u>Financial Times Information Ltd.</u>, <u>El Pais</u>, published an article entitled "Bayer to close Barcelona aspirin factory (La quimica Bayer cierra su historica planta de aspirinas de Barcelona)." <u>Business and Industry</u>, <u>OTC LatinA</u>, published an article that explicitly refers to ASPIRINA as a Bayer internal analgesic product and other articles discussing Bayer's ASPIRINA products in Brazil. One of these articles called Bayer's products "aspirin-based brands" in contrast to using the term aspirin in the generic or descriptive sense. Another <u>Business and Industry</u> article entitled "Bayer Aspirina-better the brand you know-Bayer Aspirina elsewhere" describes Bayer products "Cafiaspirina" (a caffeine and aspirin combination) and Aspirina Efervescente. The story excerpt from <u>Campaign</u> discusses a "Mexican ad for a product called Aspirina (Spanish for aspirin)" and there is no indication in the story that the mark is registered and no evidence that U.S. consumers viewing the article would understand it is referencing Bayer's goods.

Other NEXIS excerpts in the record show use of the term ASPIRINA as the equivalent of the generic English term aspirin. An excerpt from the <u>Richmond Times Dispatch</u>, Travel section, reads: "France, Italy, and Germany, it's Tylenol, although it's pronounced tee-len-ol. Aspirin is pretty close as well. In France, it's aspirine (as-per-ene) and in Italy it's aspirina (as-per-een-a)." Excerpts from the <u>Chicago Tribune</u>, <u>Los Angeles Times</u>, and the <u>Daily Star</u> refer to ASPIRINA as the Spanish or Portuguese equivalent to the generic term aspirin.

Maradona had been around. . . . He knew which medications he could take. . . . Diego had a cold? "Quiero aspirinas – I want aspirin."

<u>Los Angeles Times</u>

After a few minutes of language instruction—Where is the aspirin/Onde ha aspirina?—the pupils seemed only to care about learning the phrase, "When is the Portuguese lesson over?"

<u>Chicago Tribune</u>

Do you sell aspirin and how much does it cost? Venden Vds. Aspirina? Cuanto cuesta?

<u>Daily Star</u>

This evidence demonstrates that potential consumers in this country are also exposed to ASPIRINA as the equivalent of the term aspirin.

The NEXIS stories that were considered by the examining attorney include stories in publications originating in foreign countries, such as the <u>Cambridge Reporter</u> and the <u>British Medical Journal</u>. The <u>Cambridge Reporter</u> story "Tips for the intelligent traveler" equated the term aspirin with the foreign term ASPIRINA (Spanish and Italian) and the <u>British Medical Journal</u> letter to the editor entitled "Low dose aspirin for preventing and treating pre-eclampsia" included citations to other published studies on low dose aspirin or aspirina using these terms in the generic or descriptive sense. <u>El Ritmo de la Noche</u> ran an article entitled "La aspirina y la heroina" or "Aspirin and Heroine," but it is difficult to understand how the term ASPIRINA is being used in this article from the headline alone. <u>The News</u> published a column entitled "Letter from Guadalajara, when prices of medicines hurt," in which the columnist noted:

When campesino ranch hands I work with take ill, we haul out the aspirina. And while "Take two aspirin, some bed rest and call me in a couple days," has long been a parody of lazy sawbones, that inexpensive white pill does wonders.

That's why more than 500 billion doses of it are taken every day the world over.

Although in the record, the Board refused to consider the NEXIS evidence that originated in these foreign publications, stating that references originating in foreign countries are not probative for purposes of this proceeding. Final Decision, slip. op. at 7 n.3. We do not agree with this conclusory statement. Information originating on foreign websites or in foreign news publications that are accessible to the United States public may be relevant to discern United States consumer impression of a proposed mark. See, e.g., In re King Koil, 2006 WL 639160, at *2 (assigning some probative value to information of foreign origin); In re Remacle, 2002 WL 31563187, at *2 (finding use of foreign internet or website information acceptable as internet is a widely-available resource and particularly useful in cases involving "sophisticated medical technology"); In re Cell Therapeutics, Inc., Serial Nos. 75/313,795, 75/313,796, 2003 WL 21979838, *3-4 (TTAB Aug. 7, 2003) (relying on several NEXIS items from foreign wire services to refuse registration of mark and distinguishing earlier decisions that accorded such evidence little probative value given the sophisticated public and the widespread use of personal computers that increase access to such sources); In re Telechat Network, Inc., Serial No. 76/535,248, 2006 WL 1404223, *2-3 (TTAB May 11, 2006) (same). The probative value, if any, of foreign information sources must be evaluated on a case-by-case basis. Because of the association of the proposed mark ASPIRINA with a pharmaceutical product, the growing availability and use of the internet as a resource for news, medical research results, and general medical information, we find that the foreign publication evidence in this record carries some probative value with respect to prospective consumer perception in the United States.

The NEXIS evidence of record (including the foreign publications) shows both (1) use of the term ASPIRINA as the equivalent of the generic English term aspirin, and (2) use of the term ASPIRINA to identify Bayer's aspirin-based products. On balance, the NEXIS story excerpts provide substantial evidence to support the Board's determination that ASPIRINA is merely descriptive of analgesic goods to United States consumers.

### E. Foreign Registration of ASPIRINA

Bayer asserts that its evidence of registration of ASPIRINA in numerous foreign countries for a long period of time "evidenc[es] Applicant's ownership of trademark rights around the world, including throughout the Spanish speaking world" and provides evidence of consumer perception among potential purchasers of Bayer's products. The Board indicated that these registrations were "immaterial to the issue of inherent distinctiveness and the registerability of the same term in the United States." Final Decision, slip op. at 9. We agree. Evidence of registration in other countries is not legally or factually relevant to potential consumer perception of Bayer's analgesic goods in the United States.[6] It is true that the relevant Spanish-speaking consumer population may include people that travel to other countries or to the United States or consumers that access published print and electronic information originating in other countries. However, the fact that ASPIRINA is registered in numerous Spanish-speaking countries alone is not probative of the relevant consumer population's perception of the mark in the United States.

Bayer also asserts that registrations in Spanish-speaking countries demonstrate that the term ASPIRINA is not a defined term in Spanish and is not merely the Spanish

---

[6] We do not address here registerability determinations based on foreign registrations under Section 44 of the Lanham Act or registrations proceeding under any applicable treaties or conventions.

equivalent of a descriptive term in the United States. Each country that recognizes some form of trademark protection will have its own body of law and will evaluate a registration request in light of evidence of consumer perception in that country. This is why aspirin is entitled to trademark protection in many other countries though it was found generic for analgesic goods some time ago in the United States. See Bayer, 272 F. at 505. Thus, evidence of registration of ASPIRINA in another country is of little value to our analysis of its entitlement to protection in the United States and we cannot say it overcomes the substantial evidence that otherwise supports the Board's decision in this case.

## II.

As the Board noted, there is conflicting evidence in the record as to whether the term ASPIRINA is merely descriptive of analgesic goods as a variation or misspelling of aspirin. We are not, however, reviewing this decision de novo. Under the deferential substantial evidence standard of review, the Board's decision must be affirmed. Where two different conclusions may be warranted based on the evidence of record, the Board's decision to favor one conclusion over the other is the type of decision that must be sustained by this court as supported by substantial evidence. In re Jolley, 308 F.3d 1317, 1329 (Fed. Cir. 2002); see also Hoover Co. v. Royal Appliance Mfg. Co., 238 F.3d 1357, 1361 (Fed. Cir. 2001) ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent the board's finding from being supported by substantial evidence." (internal citation omitted)). We find that there is sufficient evidence as a reasonable mind might accept as adequate to support the Board's finding that ASPIRINA is merely descriptive.

CONCLUSION

For the foregoing reasons, the decision of the Board is

<u>AFFIRMED</u>.

# United States Court of Appeals for the Federal Circuit

2006-1279
(Serial No. 78/212,751)

IN RE BAYER AKTIENGESELLSCHAFT

NEWMAN, <u>Circuit Judge</u>, dissenting.

I respectfully dissent.  The role of the trademark is to identify the source and thus the quality of goods in trade, thereby serving the public interest as well as the private interests of commerce.  Yet the panel majority denies this role to the Bayer trademark ASPIRINA, apparently because the mark is similar to a generic word in the United States.  That is not the criterion that determines trademark status.  The correct criterion is whether, as to the specific mark ASPIRINA, it serves to associate the goods with their source, such that Bayer and the public are entitled to the safeguards and charged with the burdens of trademark recognition.

It is undisputed that ASPIRINA has been used as a trademark for more than a hundred years, and is registered to Bayer in thirty-four countries.  For example, the mark ASPIRINA was registered in Mexico in 1908.  The PTO in denying registration took pains to

qualify that it is not holding that ASPIRINA is a common or generic word; instead the PTO held that ASPIRINA is "merely descriptive." Descriptive terms are not excluded from trademark status, although they must meet a higher burden. See 1 McCarthy on Trademarks and Unfair Competition §4:6 (4th ed. 2007) ("descriptive terms with secondary meaning are, indeed, deserving of the label 'trademark'").

It is not disputed that ASPIRINA is a coined word that was created for trademark purposes, and has no other origin. The record shows no usage of ASPIRINA, in any country including the United States, other than as a trademark in association with a product provided by Bayer. The panel majority recognizes this significant fact, acknowledging that "[a]ll three dictionary definitions submitted by Bayer indicate that ASPIRINA is recognized as a registered mark somewhere in the world, supporting Bayer's assertion that the relevant purchasing public would perceive ASPIRINA as a trademark." Maj. op. at 7. The Diccionario de la Lengua Española, Vigesimal Segundo Edition (2001), the official Spanish language dictionary published by the Real Academia Española, contains the following definition:

> **aspirina**. (Del al. Aspirin, marca reg.) F. Med. Sólido blanco, cristalino, constituido por ácido acetil salicilico, que se usa como analgésico y antipirético. ‖ 2. Comprimido fabricado con esta sustancia.

Diccionario p. 232, website at http://www.rae.es. The PTO provided the following translation:

> **aspirina**. (From the German Aspirin, Registered Trademark). f. Med. White, crystalline solid, constituted by acetyl salicylic acid, which is used as an analgesic and antipyretic ‖ 2. Caplet manufactured with this substance.

PTO Br. at 7.

Spanish/English dictionaries, like the <u>Vox Everyday Spanish and English Dictionary</u> ("aspirina® <u>nf</u> aspirin®") show the trademark status. The Internet cite "diccionarios.com" similarly recognizes ASPIRINA's  trademark status ("Aspirina, del Al. <u>Aspirin</u>, nombre comercial registrado," which translates to as "Aspirina, from the German <u>Aspirin</u>, registered trademark"). The Board gave dispositive weight to a few Internet sites that did not include the trademark designation. This was incorrect, for there was no evidence of use of ASPIRINA other than as a trademark.[1] The record contains no evidence of generic usage in the marketplace. To the contrary, the dictionaries and the great weight of usage show ASPIRINA as a trademark.

Commercial policy and international treaty obligations do not favor depriving trademark owners of valuable commercial rights. <u>See</u> Paris Convention for the Protection of Industrial Property of March 20, 1883, Article 10<u>bis</u> ("The countries of the Union are bound to assure nationals of such countries effective protection against unfair competition [including prohibiting] indications or allegations liable to mislead the public as to the nature, the manufacturing process, the characteristics, the suitability for their purpose, or the

---

[1] Bayer states that it has requested correction of the improper online uses. The policing of well-known trademarks is well known to proprietors. <u>See</u> 2 <u>McCarthy on Trademarks and Unfair Competition</u> §12:1 (4th ed. 2007) (discussing the importance of policing improper trademark use by others, "[s]ometimes genericide occurs as a result of the trademark owner's failure to police the mark, resulting in widespread usage by competitors leading to a perception of genericness"). Such "widespread usage" is not here suggested.

quality, of the goods.")  As recognized in the Agreement on Trade-Related Aspects of Intellectual Property Rights, Annex 1C (Apr. 15, 1994) ("use of a trademark in the course of trade shall not be unjustifiably encumbered by special requirements"), public and private interests are served by recognition of trademark rights, not their gratuitous eradication.

The trademark status of ASPIRINA was not shown to have been eliminated in any country, and the record shows no challenge to its trademark status in the United States. The PTO Board avoided ruling that ASPIRINA is generic, although on this appeal the PTO Solicitor argued, for the first time, that ASPIRINA is generic because "aspirin" is generic. The Solicitor argued that "[w]ere it not the case, simply adding an 'a' to words like 'vitamin,' 'penicillin,' or 'ibuprofen,' would miraculously transform each of these generic terms into registrable trademarks."  PTO Br. at 20.  Such a miracle was long ago achieved at the PTO; see, e.g., UN-ASPIRIN, U.S. Reg. No. 1311932; ASPIRIN 911, U.S. Reg. No. 2930100; VITA-MIND, U.S. Reg. No. 2944356; VITA-MAN D, U.S. Reg. 2316584; SUPER-VITAMINS, U.S. Reg. No. 0695090; THE TEA.COM, U.S. Reg. No. 3110603; TEA LC, U.S. Reg. No. 2978632; iPHONE, U.S. Reg. No. 2293011.  In Sperry Rand Corp. v. Sunbeam Corp., 442 F.2d 979 (CCPA 1971) the court held that the mark LEKTRONIC, although differing by only one letter from "electronic," is not merely descriptive and is capable of trademark status.  The question is not how many letters in a word are changed; the question is whether trademark significance is possessed. Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co., 316 U.S. 203, 205 (1942) ("The protection of trade-marks is the law's recognition of the psychological function of symbols.  If it is true that we live by symbols, it is no less true that we purchase by them.")

The panel majority errs in ruling that foreign trademark status is irrelevant because foreign nations have different trademark laws. Maj. op. at 14-15. National and international trademark systems take cognizance of trademark status in other countries, for the international movement of goods and persons requires avoidance, not facilitation, of commercial confusion and deception. See Paris Convention, Article 6quinquies ("Every trademark duly registered in the country of origin shall be accepted for filing and protected as in the other countries of the Union . . . . In determining whether a mark is eligible for protection, all the factual circumstances must be taken into consideration, particularly the length of time the mark has been in use"). The status in other countries of a well-known foreign-origin mark for an established product in wide use is not irrelevant to its treatment in the United States legal system, whether for purposes of federal registration or consumer and source protection. Persons in the United States may know the mark ASPIRINA from foreign markets, where goodwill has inhered for a century of sole source of the product. In a recent decision considering issues of foreign marks, the court observed that: "Trademark is, at its core, about protecting against consumer confusion and 'palming off.' There can be no justification for using trademark law to fool immigrants into thinking that they are buying from the store they liked back home." Grupo Gigante SA de CV v. Dallo & Co., 391 F.3d 1088, 1094 (9th Cir. 2004) (footnote omitted).

The issue here is not one of extra-territoriality of unregistered marks, as the panel majority suggests, but of registration of a well-known foreign mark when the legal requirements for United States registration have been met. See In re International Flavors & Fragrances, Inc., 183 F.3d 1361, 1368 (Fed. Cir. 1999) ("Federal registration provides a useful means for the public to provide enhanced legal protections to a common law

2006-1279                                    5

property right in exchange for protection of the public against palming off and misrepresentation in the marketplace.") It is highly inappropriate to gratuitously deprive the holder of a valuable property right, a mark having long international stability and repute, of the safeguards and benefits of federal registration. To deny the statutory federal registration, there must be clear and convincing evidence of the invalidity of that property right and a sound public interest served by its forfeiture. See In re Trade-Mark Cases, 100 U.S. 82, 92 (1879) ("The right to adopt and use a symbol or a device to distinguish the goods or property made or sold by the person whose mark it is, to the exclusion of use by all other persons, has long been recognized by the common law [to be] a property right . . . .")

The principle that law abhors a forfeiture is imbedded in our jurisprudence, and it is noteworthy that the decision of the PTO left the door open for proceedings such as a showing of secondary meaning in the United States. See McCarthy, supra. However, the panel majority goes farther than the PTO and holds that the ASPIRINA mark is simply the translation of a generic word, thereby slamming shut the PTO's open door. Although the panel majority acknowledges that the issue of whether ASPIRINA is a generic word was not before the Board and is not before this court, the majority holds it unregistrable because it is similar in "appearance, sound, and meaning" to the generic English word "aspirin." Thus the court holds that because "aspirin" is generic, so is ASPIRINA. There was no hearing on the issue of genericness. See In re Merrill Lynch, Pierce, Fenner, and Smith, Inc., 828 F.2d 1567, 1571 (Fed. Cir. 1987) ("The burden of showing that a proposed mark is generic remains with the Patent and Trademark Office [and requires a] 'substantial showing by the Examining Attorney . . . .'" (quoting The Trademark Manual of Examining Procedure

§1305.04 (1974, rev. 1983))).  The Court has consistently held that a hearing is necessary before the deprivation of a property right.  <u>See</u>, <u>e.g.</u>, <u>Fuentes v. Shevin</u>, 407 U.S. 67, 80-82 (1972) ("The purpose of this [Due Process notice and hearing] requirement is not only to ensure abstract fair play to the individual.  Its purpose, more particularly, is to protect his use and possession of property from arbitrary encroachment -- to minimize substantively unfair or mistaken deprivations of property . . . .").

On the examination record, the Board's refusal of registration is not supported.  I must, respectfully, dissent.