> THIS OPINION
> IS A PRECEDENT OF THE
> T.T.A.B.

Mailed: 6/18/08

## UNITED STATES PATENT AND TRADEMARK OFFICE

_____

## Trademark Trial and Appeal Board

_____

In re Tea and Sympathy, Inc.

_____

Serial No. 77054914

_____

John Carr of Zuber & Taillieu for Tea and Sympathy, Inc.

Tarah Hardy Ludlow, Trademark Examining Attorney, Law Office 110 (Chris A.F. Pedersen, Managing Attorney).

_____

Before Quinn, Bucher and Bergsman, Administrative Trademark Judges.

Opinion by Quinn, Administrative Trademark Judge:

Tea and Sympathy, Inc. filed an application to register the mark THE FARMACY (in standard character format) for "retail store services featuring natural herbs and organic products; and on-line retail store services featuring natural herbs and organic products" (in International Class 35); and "providing integrated health services at retail locations in the nature of dietary and nutritional guidance and providing information about

dietary supplements and nutrition" (in International Class 44).[1]

The trademark examining attorney refused registration in both classes under Section 2(e)(1) of the Trademark Act, 15 U.S.C. §1052(e)(1), on the ground that the designation THE FARMACY, when used in connection with applicant's services, is merely descriptive thereof.

When the refusal was made final, applicant appealed. Applicant and the examining attorney filed briefs.[2]

The examining attorney maintains that the proposed mark merely describes the place where the services are provided and the exact purpose of the services in that "applicant sells organic herbs and products in a health and medical environment that is essentially a pharmacy with just a different phonetic spelling." (Brief, p. 3). The novel spelling employed by applicant does not diminish the mere descriptiveness of the term because, the examining attorney contends, consumers will perceive the different

---

[1] Application Serial No. 77054914, filed December 1, 2006, alleging first use anywhere and first use in commerce on January 14, 2005.

[2] Applicant attached exhibits to its brief, to which the examining attorney objected. Trademark Rule 2.142(b) provides that the record in an application should be complete prior to the filing of the appeal. These exhibits were not submitted during prosecution of the application. In view of their untimely submission, the exhibits have not been considered. *See* TBMP §1207.01 (2d ed. rev. 2004). Likewise, we have not considered the declaration of John Carr attached to applicant's reply brief.

spelling as the equivalent of the descriptive term. The examining attorney is not convinced the connotation of applicant's sale of products from a "farm setting" removes the mark from being merely descriptive; in this connection, the examining attorney argues that the mark conveys both that applicant is providing pharmacy-related products and services, and that the products originate from a farm. Thus, the examining attorney concludes, all meanings are descriptive in relation to the services. In support of the refusal the examining attorney introduced dictionary definitions of the word "pharmacy," excerpts of third-party websites and articles retrieved from the Internet, and a search report summary generated by the Google search engine.

Applicant contends that its proposed mark is a double entendre, with the "unique and different spelling" giving the mark a double connotation that renders the mark just suggestive. In this connection, applicant argues that its mark is a whimsical term, as a play on the words "pharmacy" and "farm," meant to connote the idea that applicant "is selling farm fresh, natural, pure and completely unprocessed products." (Brief, p. 10). Consequently, according to applicant, the consumer is required to make a mental leap in drawing a connection between the mark and

3

applicant's services featuring natural herbs and organic products.

Applicant sells a variety of natural herb and organic products for medicinal purposes. The record includes two advertisements run by applicant (submitted as specimens), showing the statements, among others, "Finest-Affordable Organic Medicine in Southern California," "Licensed Pharmacist on Call," "Affordable Integrated Organic Medicine," "Medical Dr. Referrals Available" and "We Support Small, Organic Family Farms."

The record includes several dictionary definitions of the commonly recognized and generally understood word "pharmacy." The word is defined as "the art of preparing and dispensing drugs; a place where drugs are sold; a drugstore." The American Heritage Dictionary of the English Language (4th ed. 2006); "a place where medicines are compounded or dispensed." Merriam-Webster's Medical Dictionary (2002).

The record also includes Internet articles and third-party websites showing that pharmacies, in addition to dispensing prescription medications, sell products such as herbal items and "natural" items intended for medical

purposes.[3]  Similarly, this evidence shows that pharmacies sell dietary supplements, and that pharmacies also provide information and advice on diet and nutrition.

We find that the mark THE FARMACY, as used in connection with applicant's services, is more than simply a misspelling of "the pharmacy."  Consumers are not likely to perceive that mark as just a misspelling, but rather as a play on the natural or farm-fresh characteristics of applicant's herbs and organic products used for medicinal purposes featured in applicant's services.  Thus, the mark conveys a dual meaning, that of the natural aspect of the goods sold by applicant and of a pharmacy.  Applicant's mark is inventive and just clever enough, being an obvious play on "the pharmacy" and "farm," so that the meaning or commercial impression of applicant's mark will be more than simply "the pharmacy."  Accordingly, applicant's mark is not merely descriptive.

---

[3] The examining attorney's evidence in this connection includes truncated Google search results for the search "pharmacy herbs." This evidence is entitled to little probative weight.  *In re Bayer Aktiengesellschaft*, 488 F.3d 960, 82 USPQ2d 1828, 1833 (Fed. Cir. 2007) ["Bayer asserts that the list of GOOGLE search summaries is of lesser probative value than evidence that provides the context within which a term is used.  We agree. Search engine results – which may provide little context to discern how a term is actually used on the webpage that can be accessed through the search result link – may be insufficient to determine the nature of the use of a term or the relevance of the search result to registration considerations."].

The present case is reminiscent of the Board's holding in *In re Grand Metropolitan Foodservice Inc.*, 30 USPQ2d 1974 (TTAB 1994). The Board found that the mark shown below

*MufFuns*

for "baked mini muffins sold frozen or fresh" was just suggestive. The Board stated:

> [W]e believe that this case involves more than simply a misspelling of a descriptive or generic word. That is to say, the mark presented for registration will be perceived, we believe, as not just a misspelled word. As applicant has pointed out, its mark does project a dual meaning or suggestiveness – that of muffins and of the "fun" aspect of applicant's food product...We have a situation, therefore, where applicant's mark has a different connotation from that conveyed by a misspelled generic or descriptive term.
>
> *****
>
> In view of the nature of applicant's inventive and somewhat stylized mark, being an obvious play on the word "muffin" and the word "fun," we believe that the meaning or commercial impression of applicant's mark will be more than that simply of the word "muffins."[4]

---

[4] We recognize that applicant in that case voluntarily submitted a disclaimer of the word "muffins." The Board stated that the disclaimer should be entered inasmuch as the examining attorney

**Decision:** The refusal to register is reversed.

---

did not object to entry of the disclaimer. In the present case, applicant did not voluntarily submit a disclaimer, nor apparently did the examining attorney believe one was necessary in the event the refusal was reversed. *See* TMEP §1213.08(c) (5th ed. 2007). Moreover, we do not believe that a disclaimer is required. As indicated above, we view applicant's mark as not merely a misspelled term, but rather as a term conveying a dual meaning. To state the obvious, applicant's registration will not preclude third parties in the trade from using the generic designation "the pharmacy" in connection with their goods and/or services.