NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**SEALY TECHNOLOGY, LLC,**
*Appellant*

**v.**

**SSB MANUFACTURING COMPANY, FKA SIMMONS BEDDING COMPANY,**
*Appellee*

---

2019-1874

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. 95/001,549.

---

Decided:  August 26, 2020

---

STEVEN MOORE, Kilpatrick Townsend & Stockton LLP, San Francisco, CA, for appellant.  Also represented by N. DEAN POWELL, Winston-Salem, NC.

JON STEVEN BAUGHMAN, Paul, Weiss, Rifkind, Wharton & Garrison LLP, Washington, DC, for appellee.  Also represented by STEFAN GEIRHOFER, MEGAN FREELAND RAYMOND.

---

Before PROST, *Chief Judge*, REYNA and HUGHES, *Circuit Judges.*

PROST, *Chief Judge.*

Sealy Technology, LLC ("Sealy") appeals from the decision of the United States Patent and Trademark Office, Patent Trial and Appeal Board ("Board") in an inter partes reexamination concluding that the single claim of United States Design Patent No. D622,531 ("the '531 patent") is unpatentable under 35 U.S.C. § 103. *See Simmons Bedding Co. v. Sealy Tech. LLC*, No. 2014-007985, 2015 WL 1481100 (P.T.A.B. Mar. 31, 2015) ("*Decision I*"); *Simmons Bedding Co. v. Sealy Tech. LLC*, No. 2018-003420, 2018 WL 2933452 (P.T.A.B. June 1, 2018) ("*Decision II*"); *Simmons Bedding Co. v. Sealy Tech. LLC*, No. 2018-003420, 2019 WL 1489533 (P.T.A.B. Mar. 29, 2019) ("*Decision on Rehearing*"). For the reasons below, we affirm.

I

The '531 patent, entitled "Euro-top Mattress Design," contains a single claim that recites "[t]he ornamental designs for a Euro-top mattress design, as shown and described." '531 patent claim 1. The '531 patent includes 10 figures. Figure 1, shown below, is a perspective view of a first embodiment of the Euro-top mattress design.



Fig. 1

'531 patent Figure 1.

In February 2011, SSB Manufacturing Company ("Simmons") sought inter partes reexamination of the '531 patent.    Upon granting reexamination, the examiner agreed that Simmons presented newly found prior art. Nevertheless, the examiner declined to adopt any of Simmons's requested anticipation and obviousness rejections. Simmons appealed to the Board.

The Board adopted the examiner's description of the claimed design and provided that the design contains six elements:

1. The mattress has a thick, straight-sided pillow top layer. The pillow top layer has a flat top surface with piping along the top edge.

2. The proportion of the pillow top layer is approximately 1/3rd the thickness of the mattress layer.

3. The pillow top is attached to the mattress with a shared piping along the bottom of the pillow top layer and the top of the mattress.

4. There are eight flat vertical handles, distributed two on each side and two on each end which are located between the top and bottom piping of the mattress.

5. The horizontal piping along the edges of the top and bottom of the mattress and along the top flat surface of the pillow top layer has a contrasting appearance.

6. The [eight] flat vertical handles each have contrasting sides or edges running vertically with the length of the handles.

*Decision I*, 2015 WL 1481100, at *2.

The Board also entered new grounds of rejection based on obviousness.    Sealy thereafter elected to reopen

prosecution and presented declaration testimony to the examiner. Notwithstanding the additional evidence Sealy presented, the examiner adopted the Board's new grounds of rejection. Sealy then appealed to the Board. The Board affirmed the examiner's determination that the additional evidence Sealy submitted did not overcome the new grounds of rejection stated in the Board's previous decision. Sealy then requested rehearing, which the Board denied.

After having its rehearing request denied, Sealy appealed to this court. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

II

Sealy first challenges the Board's construction of the claimed contrast. The Board determined that "the only contrast necessary is one of differing appearance from the rest of the mattress." *Decision I*, 2015 WL 1481100, at \*3. Sealy contends that the Board's view on contrast is too broad and effectively reads out any contrast from the claimed design. Sealy proposes that the proper interpretation of contrast, as invoked in the figures of the '531 patent, requires "contrasting value and/or color." Appellant's Br. 23. According to Sealy, such contrast would require there to be "something that causes the edge to stand out or to be strikingly different and distinct from the rest of the design to be considered in contrast." *Id.* at 25.

During an inter partes reexamination proceeding, the Board applies the broadest reasonable construction when interpreting the meaning and scope of a claim. *In re Bond*, 910 F.2d 831, 833 (Fed. Cir. 1990). We review the Board's construction "based on intrinsic evidence de novo and its factual findings based on extrinsic evidence for substantial evidence." *HTC Corp. v. Cellular Commc'ns Equip., LLC*, 877 F.3d 1361, 1367 (Fed. Cir. 2017).

We agree with the Board's interpretation regarding the level of contrast claimed. First, the '531 patent does not

provide any textual description regarding the contrast in the '531 patent. Instead, Sealy's argument regarding the degree of claimed contrast is based on how Sealy contends contrast would "have been understood by designers of ordinary skill in the mattress design art." Appellant's Br. 25–26. To support its position, Sealy relies on the *Manual of Patent Examining Procedure* ("MPEP") § 1503.02(II), the declaration of Mr. Robert Anders, and several dictionary definitions of "contrast." Sealy, noting that MPEP § 1503.02(II) provides that contrast may be shown using line shading and stippling, argues that "a designer of ordinary skill in the art would understand that [the] claimed design includes contrast through the use of stippling and surface line shading." Reply Br. 11.

The question, however, is not whether line shading and stippling indicates contrast, but rather, whether it indicates contrast only to the degree Sealy prefers—e.g., "strikingly different." The very MPEP section Sealy relies on indicates that it does not. MPEP § 1503.02(II) provides that the claim will "broadly cover contrasting surfaces unlimited by colors," and that the "claim would not be limited to specific material." Accordingly, § 1503.02(II) does not limit the level of contrast to the particular degree that Sealy urges.

To argue that the level of contrast should be limited to a particular degree, Sealy relies on Mr. Anders's declaration and dictionary definitions.[1] The examiner, however, determined that Mr. Anders's declaration (along with the new arguments Sealy advanced following the Board's new grounds of rejection) did not demonstrate that the '531 patent exhibited the level of contrast Sealy was urging.

---

[1] As Simmons points out, the examiner during a reexamination proceeding of a related patent determined that Mr. Anders is "not a mattress designer of ordinary skill." Appellee's Br. 25 (citing J.A. 2746).

Rather, the examiner determined that the '531 patent "does not indicate a significant level or degree of contrast" and does not "establish that the degree of contrast between the piping and mattress is any different than the range of contrast available in the cited prior art." J.A. 2496–97. The Board agreed with examiner that Sealy's submissions did not overcome the new grounds of rejection. *Decision II*, 2018 WL 2933452, at *3. With respect to the dictionary definitions, the Board on appeal pointed out that the definitions were not presented to the examiner and that therefore arguments regarding the dictionaries were improper. The Board further found that, even if it were to consider those definitions, they would not alter the Board's conclusion. According to the Board, Sealy's reliance on dictionary definitions to redefine the term contrast "so as to narrow the construction of the drawings themselves" was misplaced. *Id.* at *2.

In light of the above, we agree with the Board's interpretation of contrast as it pertains to the '531 patent—that the only contrast required is one of differing appearance, which may be achieved by such means as "contrasting fabric, contrasting color, contrasting pattern, and contrasting texture," *id.* at *2. Neither the '531 patent nor the drawing convention that Sealy claims to have invoked limits the level of contrast to the particular degree Sealy urges. We do not find that the examiner or the Board erred in their treatment of Mr. Anders's declaration or the dictionary definitions. *See Arthrex, Inc. v. Smith & Nephew, Inc.*, 935 F.3d 1319, 1330–31 (Fed. Cir. 2019) (affirming Board's claim construction notwithstanding patent owner's citation to "dictionaries that may support a narrower interpretation").

## III

Sealy also challenges the Board's obviousness determinations. Specifically, Sealy challenges the Board's factual findings regarding whether the prior art constitutes proper

primary references and the Board's evaluation of Sealy's purported secondary considerations of non-obviousness. As Simmons points out, Sealy does not challenge the Board's "combination of references nor the Board's single-reference obviousness findings." Appellee's Br. 57.

## A

"For design patents, the ultimate inquiry for obviousness is whether the claimed design would have been obvious to a designer of ordinary skill who designs articles of the type involved." *Spigen Korea Co. v. Ultraproof, Inc.*, 955 F.3d 1379, 1383 (Fed. Cir. 2020) (internal quotation marks omitted). Obviousness is a question of law based on underlying factual questions. *MRC Innovations, Inc. v. Hunter Mfg., LLP*, 747 F.3d 1326, 1331 (Fed. Cir. 2014). Such factual inquiries include "(1) the scope and content of the prior art; (2) the level of ordinary skill in the art; (3) the differences between the claimed invention and the prior art; and (4) objective evidence of non-obviousness." *Id.* (citing *Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966)).

We review the Board's legal determinations de novo and its factual findings for substantial evidence. *Campbell Soup Co. v. Gamon Plus, Inc.*, 939 F.3d 1335, 1339 (Fed. Cir. 2019). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). "Where two different conclusions may be warranted based on the evidence of record, the Board's decision to favor one conclusion over the other is the type of decision that must be sustained by this court as supported by substantial evidence." *IXI IP, LLC v. Samsung Elecs. Co.*, 903 F.3d 1257, 1262 (Fed. Cir. 2018) (quoting *In re Bayer Aktiengesellschaft*, 488 F.3d 960, 970 (Fed. Cir. 2007)).

## B

### 1

The obviousness analysis for design patents requires that there be a prior art design that qualifies as a primary reference. *Spigen,* 955 F.3d at 1383, 1385. Whether a prior art design qualifies as a primary reference depends on whether the prior art reference "creates 'basically the same' visual impression as the claimed design." *Id.* (cleaned up). The determination of whether a prior art design qualifies as a primary reference is a factual issue. *Id.*

The Board determined that Aireloom Heritage, pictured below, met all six of the claim design elements and disclosed "basically the same" design as the claimed design. Sealy contends that Aireloom Heritage creates "an entirely different overall visual impression," and is therefore not a proper primary reference, because it lacks the requisite contrast and because the red blanket obstructs a view of one of the handles.[2] Appellant's Br. 44–45.



Appellant's Br. 10.

---

[2]    Sealy does not challenge the Board's finding regarding the other elements of the claimed design.

As to contrast, Sealy contends that Aireloom Heritage is a monochromatic mattress that lacks the requisite contrast to create the same visual impression as the claimed design. This argument, however, depends on us adopting Sealy's proposed interpretation of contrast. *See* Appellant's Br. 39. As discussed, however, we agree with the Board's interpretation of contrast. With this interpretation in mind, we determine that substantial evidence supports the Board's finding of the requisite contrast. *See Decision I*, 2015 WL 1481100, at *3 ("[E]ach of the aforementioned five Exhibits includes contrasting edging/piping of both the mattress and handles as the edging/piping can be easily distinguished from the rest of the mattress. . . ."); J.A. 2496 (examiner finding that "all piping . . . appear[s] to have at least some difference in appearance in comparison to the mattress").

The Board also determined that, although only one vantage point is shown of the Aireloom Heritage mattress and that a blanket covered a portion of the mattress, the image of the Aireloom Heritage mattress still depicted eight handles. This finding is supported by the "unrebutted evidence in the form of an Expert Report of Ed Scott," which provided that if there were handles on one side of the mattress, a designer of ordinary skill in the art would understand there to be handles with the same design, placement, and proportion, on the opposite side. *Decision I*, 2015 WL 1481100, at *2 (citing J.A. 1140–41); *see also* J.A 1136. Further, the examiner found that a designer of ordinary skill in the art would have understood that there is a handle under the red blanket, J.A. 852 (noting that "4 vertical handles are shown"), which the Board agreed with, *Decision I*, 2015 WL 1481100, at *3.

Accordingly, we determine that substantial evidence supports the Board's determination that Aireloom

Heritage discloses "basically the same" design as the claimed design, and therefore constitutes a primary reference.[3]

2

Sealy also challenges the Board's findings regarding Sealy's purported secondary considerations. Specifically, Sealy contends that the Board failed to consider the alleged "copying" of the claimed design.

Sealy's "copying" argument during the reexamination proceeding was based mainly on the fact that Sealy's mattress designs were on the market for over a year before Simmons introduced its alleged copycat products. *See* Appellant's Br. 55–57 (citing J.A. 2370–72). The Board, in its decision on rehearing, stated that it "did not overlook evidence of copying," but instead "agreed with the examiner's general determination as to secondary considerations," which included "acknowledging [Sealy's] assertions as to copying." *Decision on Rehearing,* 2019 WL 1489533, at *2. Indeed, the examiner's general determination noted that Sealy presented argument regarding alleged "copying," among other secondary considerations. J.A. 2498. The examiner then found Sealy's secondary considerations to be unpersuasive and to not outweigh the strong evidence of obviousness presented in the Board's new grounds of rejection. J.A. 2498–99 ("the strong evidence of obviousness presented in the new grounds of rejection by the Board outweighs the secondary considerations"); *see also W. Union*

---

[3]    Because we determine that substantial evidence supports the Board's finding that Aireloom Heritage, a reference the Board did not combine with any other prior art to disclose the claimed design, *see* Appellee's Br. 54 n.10, is a proper primary reference, we find it unnecessary to consider Sealy's challenges to the other four references that the Board determined were primary references.

*Co. v. MoneyGram Payment Sys., Inc.*, 626 F.3d 1361, 1373 (Fed. Cir. 2010) ("[W]eak secondary considerations generally do not overcome a strong prima facie case of obviousness."). While a more comprehensive discussion of "copying" would be preferred, given the circumstances here—including the appropriate interpretation of "contrast," the analysis and application of the prior art, and the examiner's and Board's more detailed discussion of other secondary considerations—we disagree that the comparatively limited discussion of "copying" alone constitutes a sufficient basis to disturb the Board's overall determination of obviousness. *See MySpace, Inc. v. GraphOn Corp.*, 672 F.3d 1250, 1263–64 (Fed. Cir. 2012) (finding no error in a district court's failing to explicitly mention secondary considerations "when the record establishes that the evidence was properly before and considered by the court").

## IV

Because we affirm the Board's obviousness determination over the Aireloom Heritage reference, we decline to consider Sealy's challenges to the other four references. We have considered Sealy's remaining arguments and find them unpersuasive. For the foregoing reasons, we affirm the Board.

## AFFIRMED