NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**IN RE: RANDY WAYNE WHITE,**
*Appellant*

---

2024-1073

---

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in No. 90758882.

---

Decided:  July 10, 2025

---

JOHN TODD TIMMERMAN, Shumaker, Loop & Kendrick, LLP, Tampa, FL, for appellant.  Also represented by DUANE A. DAIKER.

ERICA JEUNG DICKEY, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, for appellee Coke Morgan Stewart.  Also represented by MICHAEL CHAJON, SARAH E. CRAVEN, MAI-TRANG DUC DANG, AMY J. NELSON.

---

Before DYK and CUNNINGHAM, *Circuit Judges*, and HALL, *District Judge*.[1]

PER CURIAM.

Randy Wayne White ("White") appeals from the final decision of the United States Patent and Trademark Office ("PTO") Trademark Trial and Appeal Board ("Board") refusing registration of the mark YUCATAN SHRIMP. The Board's finding that the mark is descriptive—and thus not eligible for registration—is supported by substantial evidence. We affirm.

BACKGROUND

Mr. White owns and operates a restaurant known as "Doc Ford's Rum Bar & Grille" on Sanibel Island in Florida. The name of the restaurant is a reference to the "Doc Ford" series of novels written by Mr. White. The restaurant offers a dish called "YUCATAN SHRIMP". The restaurant's menu labels it a "SIGNATURE DISH" and includes the following description: "Tomlinson[2] traveled to the Bay of Ascension, Quintana Roo, Mexico to fish for bonefish and came back with this great recipe. Steamed peel-and-eat shrimp in a dressing of real butter, garlic, mild Colombian chilies, fresh cilantro and Key lime juice." J.A. 24, 26.

On June 7, 2021, Mr. White filed U.S. Trademark Application Serial No. 90758882 ("the '882 Application"), seeking protection of the mark YUCATAN SHRIMP (in standard characters) for use in connection with "prepared food, namely, shrimp." J.A. 18. Mr. White subsequently amended the description to "prepared food, namely,

---

[1]    Honorable Jennifer L. Hall, District Judge, United States District Court for the District of Delaware, sitting by designation.

[2]    "Tomlinson" is a fictional character from Mr. White's "Doc Ford" novels.

shrimp, not live." J.A. 120. On May 16, 2022, the examiner issued a Final Office Action that refused registration under the Lanham Act § 2(e)(1), 15 U.S.C. § 1052(e)(1), because the applied-for mark was merely descriptive of the identified goods. J.A. 180. The examiner concluded that "YUCATAN SHRIMP immediately describes a characteristic and ingredient of applicant's goods, namely, that they are small crustaceans cooked in the style of the Yucatan Peninsula in the Gulf Coast of Mexico." J.A. 182.

Mr. White appealed to the Board, which affirmed the examiner's refusal to register the mark. The Board agreed with the examiner that "YUCATAN SHRIMP, when considered as a whole, is merely descriptive of the goods in the application because it identifies a characteristic of the goods, namely, a Mexican-inspired shrimp dish." J.A. 7–8.

Mr. White appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(B).

DISCUSSION

I

We consider whether the Board erred in refusing registration on the ground that the mark is descriptive. We review the Board's legal conclusions de novo and its factual findings for substantial evidence. *In re Cordua Rests., Inc.*, 823 F.3d 594, 599 (Fed. Cir. 2016). The Board's determination that a mark is merely descriptive is a factual finding that we review for substantial evidence. *In re TriVita, Inc.*, 783 F.3d 872, 874 (Fed. Cir. 2015). Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal quotation marks omitted) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where two different conclusions may be warranted based on the evidence of record, the Board's decision to favor one conclusion over the other is the type of decision that must be sustained

by this court as supported by substantial evidence." *In re Bayer AG.*, 488 F.3d 960, 970 (Fed. Cir. 2007) (citations omitted).

A mark is not registerable if, when used in connection with an applicant's goods or services, the mark is "merely descriptive" of those goods or services. 15 U.S.C. § 1052(e)(1). "A mark is merely descriptive if it immediately conveys information concerning a feature, quality, or characteristic of the goods or services for which registration is sought." *In re N.C. Lottery*, 866 F.3d 1363, 1367 (Fed. Cir. 2017) (citing *In re Bayer*, 488 F.3d at 963). "The question is whether someone who is presented with the mark in connection with the goods or services would understand that the mark describes the goods or services." *In re TriVita*, 783 F.3d at 874 (citing 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 11:16 (4th ed. 2014)).

Thus, we review whether the Board's conclusion—that a consumer would understand the YUCATAN SHRIMP mark to convey information about the dish offered at Mr. White's restaurant—is supported by substantial evidence.

## II

Substantial evidence supports the Board's conclusion that the YUCATAN SHRIMP mark is merely descriptive of Mr. White's goods. The examiner marshalled a legion of recipes and descriptions of "Yucatan Shrimp" dishes from third-party cooking and restaurant webpages, showing that the public understands "Yucatan Shrimp" to refer to a dish that features shrimp prepared with a set of common ingredients associated with Mexican cuisine, such as hot peppers or sauce, citrus juice, and cilantro. J.A. 39–113. The Board found that the third-party evidence establishes that YUCATAN SHRIMP is recognized as a dish using shrimp and particular ingredients associated with Mexican cuisine. J.A. 8.

The Board also relied on Mr. White's own usage of the mark on his restaurant's menu. The menu describes the dish as originating in Quintana Roo, Mexico, which encompasses a portion of the Yucatan Peninsula. J.A. 24, 26. And the menu explains that the dish is prepared using the same ingredients as the third-party dishes described above, further supporting the Board's finding that the public would recognize the YUCATAN SHRIMP mark as describing a shrimp dish with common ingredients. *Id.*

The third-party webpages and Mr. White's own menu provide substantial evidence support for the Board's conclusion that the YUCATAN SHRIMP mark is merely descriptive.

### III

Mr. White's arguments are unpersuasive. Mr. White first contends that the Board's decision should be reversed because the examiner failed to demonstrate "that there is a particular style of cooking originating, or understood to originate, in the Yucatan region of Mexico." Appellant's Br. 16. But the examiner relied on a wealth of evidence, in the form of third-party recipes, dish descriptions, and comments, in support of its finding that consumers associate YUCATAN SHRIMP with Mexican cuisine and a dish made with the same primary ingredients. Indeed, Mr. White's restaurant's menu expressly associates Mr. White's YUCATAN SHRIMP dish with Mexican cuisine. The mere fact that some third-party recipes had variations, including additional ingredients, did not preclude the Board from drawing the reasonable conclusion that YUCATAN SHRIMP describes the characteristics and ingredients of Mr. White's own dish.

Next, Mr. White contends that the Board improperly relied on a "new ground for refusal" of the registration that was not relied on by the examiner. According to Mr. White, "the [Board]'s subtle shift from the mark being merely descriptive of 'a style of cooking that originates in the

Yucatan region of Mexico,' to being merely descriptive of a 'Mexican-inspired' food dish, was improper." Appellant's Br. 30–31. We disagree. The Board's use of slightly different language is not a new ground. Both the Board and the examining attorney refused the Application on the same ground that the mark is merely descriptive of Mr. White's shrimp dish.

Mr. White further asserts that the examiner erred by disregarding certain evidence Mr. White submitted. Mr. White submitted a 2010 *New York Times* article and recipe, along with accompanying public comments, describing the Doc Ford's Rum Bar & Grille's YUCATAN SHRIMP recipe and associating it with the restaurant. J.A. 125–175. Although the examiner did not consider this evidence, the Board did consider it and concluded that it "does not rebut the Examin[er's] far more extensive third-party restaurant and cooking website evidence." J.A. 11. Thus, even if the examiner's refusal to consider the evidence were erroneous, any error was harmless because the Board considered the evidence and reasonably concluded that the YUCATAN SHRIMP mark is merely descriptive. Indeed, the article contains several public comments associating the dish with Mexico and Mexican cuisine, further supporting the Board's finding that consumers would understand YUCATAN SHRIMP to describe a characteristic or ingredient of Mr. White's dish.

Finally, Mr. White contends that any doubts as to descriptiveness should have been resolved in his favor. This argument simply repackages Mr. White's complaints about the Board's adverse finding. There is no basis on this record to conclude that the examiner or the Board doubted the descriptiveness of the mark or that they improperly resolved any doubts against Mr. White.

IN RE: WHITE                                                                  7

## CONCLUSION

For these reasons, we affirm the Board's decision that the YUCATAN SHRIMP mark applied for in the '882 Application is descriptive of Appellant's goods or services and therefore ineligible for registration.

**AFFIRMED**