THIS OPINION IS A
PRECEDENT OF THE TTAB

Mailed:
January 28, 2011

**UNITED STATES PATENT AND TRADEMARK OFFICE**
_____

**Trademark Trial and Appeal Board**
_____

In re Thomas Nelson, Inc.
_____

Serial No. 76681269
_____

Edward D. Lanquist, Jr. of Waddey & Patterson, P.C. for
Thomas Nelson, Inc.

Tracy Whitaker-Brown, Trademark Examining Attorney, Law
Office 111 (Craig D. Taylor, Managing Attorney).
_____

Before Zervas, Cataldo and Bergsman,
Administrative Trademark Judges.

Opinion by Bergsman, Administrative Trademark Judge:

Thomas Nelson, Inc. ("applicant") filed a use-based

application to register the mark NKJV, in standard

character form, on the Principal Register for "bibles," in

Class 16. Applicant claimed ownership of the following

registrations for bibles:

1. Registration No. 2501485 for the mark NKJV NEW

KING JAMES VERSION, in typed drawing form, registered under

the provisions of Section 2(f) of the Trademark Act of

1946, 15 U.S.C. §1052(f), on October 30, 2001. The Section

8 affidavit has been accepted and the Section 15 affidavit has been acknowledged;

2.   Registration No. 2514142 for the mark NKJV and design shown below.  Applicant registered this mark under the provisions of Section 2(f) of the Trademark Act on December 4, 2001.  The Section 8 affidavit has been accepted and the Section 15 affidavit has been acknowledged.



The Trademark Examining Attorney refused to register applicant's mark under Section 2(e)(1) of the Trademark Act of 1946, 15 U.S.C. §1052(e)(1), on the ground that applicant's mark is merely descriptive.  According to the Examining Attorney, NKJV immediately informs consumers that applicant's bible is the New King James Version.[1]

While maintaining that its mark is not merely descriptive, applicant requested in the alternative that NKJV be allowed to register on the Principal Register under Section 2(f).  The Examining Attorney continued the refusal under Section 2(e)(1) and denied registration under Section

---

[1] The Examining Attorney's Brief, unnumbered page 6.

2(f). The issues on appeal are whether applicant's mark is merely descriptive and, if so, whether applicant's mark has acquired distinctiveness.

## Preliminary Matter

It is surprising that this application could reach the Board on appeal without resolution by the applicant and examining attorney of either of the two questions presented, in view of the fact that applicant owns the two registrations noted above for NKJV NEW KING JAMES VERSION and NKJV and design issued under the provisions of Section 2(f).

If an applicant initially seeks registration based on acquired distinctiveness or amends its application to seek registration based on acquired distinctiveness without expressly reserving its right to argue that its mark is inherently distinctive, registration under Section 2(f) is an admission that the mark is not inherently distinctive. *Yamaha International Corporation v. Hoshino Gakki Co. Ltd.,* 6 USPQ2d 1001, 1005 (Fed. Cir. 1988); *Kasco Corp. v. Southern Saw Services, Inc.,* 27 USPQ2d 1501, 1506 n.7 (TTAB 1993) ("By amending (without) reservation its application to claim that its green wrapper had become distinctive of its saw blades, [defendant] conceded that the green wrapper was not inherently distinctive of its saw blades … when

3

[defendant] amended its application to claim the benefits of Section 2(f), it did not reserve its right to argue in the alternative that its green wrapper was, from the outset, inherently distinctive"); *see also* TMEP §1212.02(c) (7th ed. 2010).  An applicant can avoid the admission that its mark is not inherently distinctive if it makes the claim of acquired distinctiveness in the alternative and files an appeal of the refusal on the basis that the mark is not inherently distinctive (*e.g.,* the mark is merely descriptive).  Of course, if an appeal in the alternative results in a finding of descriptiveness and also the presence of acquired distinctiveness, then descriptiveness, though not conceded by the applicant, would be present.

During the prosecution of this application, the better practice would have been for the examining attorney to have reviewed the files for applicant's prior registrations to determine whether applicant had previously conceded that NKJV is merely descriptive or, perhaps had its mark found descriptive on appeal.  At that point, the descriptiveness refusal might have been obviated because applicant could not have in good faith continued to maintain its position that NKJV was not merely descriptive.  Furthermore, the examining attorney would have known the particulars of the Section 2(f) claims in the prior registrations.  In this

4

regard, because the USPTO has already recognized that the letters NKJV when used in connection with bibles had acquired distinctiveness, that question, too, might have been resolved.

<u>Evidence of Descriptiveness</u>

The Examining Attorney submitted the following evidence to demonstrate that NKJV is merely descriptive when used in connection with bibles:

1.   Entries from the *AcronymFinder.com* and the *FreeDictionary.com* websites identifying NKJV as meaning "New King James Version."[2]  The examining attorney also submitted an entry from the *Dictionary.com* website that did not identify NKJV but provided a link to the *AcronymFinder.com* website.  The *AcronymFinder.com* website displayed a link to an advertisement for "NKJV Bibles in Bulk."  The examining attorney did not follow-up this link to show what it displayed.  The *Dictionary.com* website also displayed links to what appear to be advertisements for NKJV Open Bible and NKJV Narration.  The examining attorney did not follow-up this link to show what it displayed. Finally, the  *FreeDictionary.com* website had links to advertisements for NKJV bibles ("NKJV at Amazon.com" and

---

[2] November 27, 2007 Office Action.

"Case Quantity.  Wholesale Bibles … We currently sell KJV, Nkjv, NIV, Amplified, Nrsv, Spanish NVI, and RVR bibles").

2.    An advertisement from the *Amazon.com* website for the book Life Application Study Bible NKJV "by Tyndale" which is touted as the "#1 Selling Study Bible."[3]  While it is not clear who "by Tyndale" is referencing, other material in the record shows that William Tyndale was an important figure in the history of the English Bible. William Tyndale published the first English version of the Bible translated from Hebrew and Greek sources in 1525.[4]

3.    In the reader comments to the Cammenga article referenced in footnote 4, one reader asked, "NKJV vs. KJV … as far as easier reading for a new christian (sic) (my wife) would the NKJV be better. (sic)"  In the text, it is clear that the letters KJV are an abbreviation for King James Version and that the letters NKJV are an abbreviation for the New King James Version.[5]

---

[3] April 30, 2008 Office Action.  Applicant asserts that this title is sold by applicant.  (Applicant's August 12, 2008 Response).

[4] The Columbia Encyclopedia, "Bible" (6th Ed. 2001-2007) attached to the April 30, 2008 Office Action.  One commentator referenced William Tyndale as "[t]he father of the English Bible."  Ronald Cammenga, "KJV vs. NIV" published in the *GraceOnlineLibrary.org* website attached to the October 16, 2008 Office Action.

[5] *See also* Abbreviations Dictionary, p. 579 (2001), American Heritage Dictionary of the English Language (2007), The Columbia Encyclopedia, "Bible" (6th Ed. 2001-2007), *Merriam-Webster.com* all attached to the April 30, 2008 Office Action.

4.    An excerpt from the "Answers" section of the *Yahoo.com* website asking the question, "Nkjv vs niv[6] – which is best, all suggestions are welcome? … i (sic) have a nkjv bible, now my friend presented me with a niv (sic) version. which (sic) version you (sic) think is best and why?"[7]  One response stated that "I mainly use NKJV, although I think the NIV is fine.  I just feel the NKJV is more poetic and flows better … The NKJV is more conversational and easier to read."  In the text, it is clear that the letters NKJV are an abbreviation for the New King James Version.

5.    Brent Kercheville, "My Top Bible Translations" (2008) appearing in the *ChristianMonthlyStandard.com* website identified his top Bible translations including the "New King James Version (NKJV)."[8]  Kercheville writes that "I still have the burgundy genuine leather bound NKJV Open Bible given to me on my 16th birthday … I still use the NKJV from time to time … the NKJV is still good and trustworthy."  Kercheville uses initials to refer to the different Bible versions (*e.g.,* English Standard Version (ESV), Holman Christian Standard Bible (HCSB), New Revised Standard Version (NRSV)).

---

[6] NIV stands for the New International Version of the bible.
[7] October 16, 2008 Office Action.
[8] October 16, 2008 Office Action.

7

Serial No. 76681269

6.    An excerpt from the *Scribd.com* website posting an article by Dr. Dale A Robbins, "Why So Many Bible Translations?"[9]  Dr. Robbins explains that "Dr. Lewis Foster, one of those who helped translate the NIV and NKJV says, 'It is necessary to continue making translations and revising old ones if people are to read the Word of God in their contemporary languages.'"

7.    An excerpt from the "Bible Versions" column in the Chick Publications website (*chick.com*) written by David W. Daniels, author of "The King James Bible Companion."[10]

> Question:  I know the New King James is said to be a "revision of the King James."  But were the Greek and Hebrew texts for the New King James the same as they were for the King James?
>
> Answer:  The NKJV is not a revision of the King James Bible at all.  The Greek and Hebrew *behind* the NKJV are the same as for the *modern perversions.*  They are **not** the same as the Greek and Hebrew behind the King James Bible, God's preserved words in English. (Emphasis in the original).

8.    Terry Watkins, "The Teen Study Bible" appearing in the *Biblebelievers.com* website refers to different versions of the Bible by acronyms (*e.g.,* American Standard

---

[9] October 16, 2008 Office Action.
[10] October 16, 2008 Office Action.

8

Serial No. 76681269

Version (ASV), New International Version (NIV), New King James Version (NKJV)).

9.    An excerpt from the *Fitnessforoneandall.com* website "Verse Evaluations: KJV vs. NKJV – Part One."[11]  In this essay, the author discusses "the relationship of the *King James Version* (KJV) and the *New King James Version* (NKJV).  *The Literal Translation of the Bible* (LITV for "Literal Version") and the *Modern King James Version* (MKJV) were also referred to."  (Emphasis in the original).

10.    An excerpt from the *Biblesbythecase.com* website advertising the sale of various versions of the NKJV Bible.[12]

We note that in the October 16, 2008 Office Action, the examining attorney submitted a search summary of results from the GOOGLE search engine.  A search summary of Internet search results has little probative value, because such a list does not show the context in which the term is used on the listed web pages.  *See In re Bayer Aktiengesellschaft*, 488 F.3d 960, 967, 82 USPQ2d 1828, 1833 (Fed. Cir. 2007) (GOOGLE® search results that provided very little context of the use of ASPIRINA deemed to be "of

---

[11] October 16, 2008 Office Action.
[12] October 16, 2008 Office Action.  Applicant reiterates that it is the exclusive distributor of the New King James Version of the Bible in the United States and this advertisement is of applicant's Bibles.  (Applicant's December 11, 2008 Response).

little value in assessing the consumer public perception of the ASPIRINA mark"); *In re Tea and Sympathy, Inc.*, 88 USPQ2d 1062, 1064 n.3 (TTAB 2008) (truncated Google® search results entitled to little probative weight without additional evidence of how the searched term is used); *In re Thomas,* 79 USPQ2d 1021 (TTAB 2006) (Board rejected an applicant's attempt to show weakness of a term in a mark through citation to a large number of GOOGLE® "hits" because the "hits" lacked sufficient context); *In re King Koil Licensing Co. Inc.*, 79 USPQ2d 1048 (TTAB 2006); *In re Remacle*, 66 USPQ2d 1222, 1223 n.2 (TTAB 2002); *In re Fitch IBCA Inc.*, 64 USPQ2d 1058 (TTAB 2002).  In this case, because we are determining whether consumers would perceive NKJV as a trademark or as a description of the bibles, the text provided with the search summary results was too scant to be helpful in making that determination.  Accordingly, the search summary results did not provide sufficient context to have any probative value and, therefore, we gave those search results no consideration.

Whether NKJV is merely descriptive?

A term is merely descriptive if it immediately conveys knowledge of a significant quality, characteristic, function, feature or purpose of the products it identifies.

*In re Gyulay,* 820 F.2d 1216, 3 USPQ2d 1009, 1009 (Fed. Cir. 1987). Whether a particular term is merely descriptive is determined in relation to the goods for which registration is sought and the context in which the term is used, not in the abstract or on the basis of guesswork. *In re Abcor Development Corp.,* 588 F.2d 811, 200 USPQ 215, 218 (CCPA 1978); *In re Remacle,* 66 USPQ2d 1222, 1224 (TTAB 2002). In other words, the question is not whether someone presented only with the mark could guess the products listed in the description of goods. Rather, the question is whether someone who knows what the products are will understand the mark to convey information about them. *In re Tower Tech, Inc.,* 64 USPQ2d 1314, 1316-1317 (TTAB 2002); *In re Patent & Trademark Services Inc.,* 49 USPQ2d 1537, 1539 (TTAB 1998); *In re Home Builders Association of Greenville,* 18 USPQ2d 1313, 1317 (TTAB 1990); *In re American Greetings Corp.,* 226 USPQ 365, 366 (TTAB 1985). In this case, the issue is whether the term NKJV directly conveys information about bibles to consumers.

"If one must exercise mature thought or follow a multi-stage reasoning process in order to determine what characteristics the term indentifies, the term is suggestive rather than merely descriptive." *In re Tennis*

11

*in the Round, Inc.,* 199 USPQ 496, 497 (TTAB 1978); *see also, In re Shutts,* 217 USPQ 363, 364-365 (TTAB 1983); *In re Universal Water Systems, Inc.,* 209 USPQ 165, 166 (TTAB 1980).

A word, term, or letters that are a recognized abbreviation for the goods in the application is merely descriptive. *Foremost Dairies, Inc. v. The Borden Company,* 156 USPQ 153, 154 (TTAB 1967); *Calgon Corporation v. Hooker Chemical Corporation,* 151 USPQ 359, 360 (TTAB 1966). However, not all abbreviations are necessarily merely descriptive.

> While each case must be decided on the basis of the particular facts involved, it would seem that, as a general rule, initials cannot be considered descriptive unless they have become so generally understood as representing descriptive words as to be accepted as substantially synonymous therewith.

*Modern Optics, Inc. v. Univis Lens Co.,* 234 F.2d 504, 110 USPQ 293, 295 (CCPA 1956); *see also Southwire Co. v. Kaiser Aluminum & Chemical Corp.,* 196 USPQ 566, 573 (TTAB 1977).

Accordingly, for NKJV to be merely descriptive of applicant's bibles, we have to find the following:

1.  NKJV is an abbreviation for "New King James Version";

Serial No. 76681269

2.   "New King James Version" is merely descriptive of bibles; and

3.   A relevant consumer viewing NKJV in connection with bibles would recognize it as an abbreviation of the term "New King James Version."

*In re Harco Corp.,* 220 USPQ 1075, 1076 (TTAB 1984).

A.   Whether NKJV is an abbreviation for "New King James Version"?

Entries from the *AcronymFinder.com* and the *FreeDictionary.com* websites identify NKJV as meaning "New King James Version."  Furthermore, many of the references submitted by the examining attorney identify different versions of the bible by acronyms or initials (*e.g.,* New King James Version (NKJV)).  Finally, applicant is the owner of Registration No. 2501485 for the mark NKJV NEW KING JAMES VERSION which may lead a consumer viewing such mark as believing the letters NKJV are an abbreviation for "New King James Version."  Accordingly, we find that NKJV when used in connection with bibles is an abbreviation for the New King James Version.

B.   Whether "New King James Version" used in connection with bibles is merely descriptive?

We start by finding that the "King James Version" is merely descriptive for a well-known version of the Bible. *See* The Random House Dictionary of the English Language (Unabridged), p. 1057 (2nd ed. 1987) ("King James Version …

13

See Authorized Version") and p. 139 ("Authorized Version …
an English version of the Bible prepared in England under
King James I and published in 1611.  Also called King James
Version").  It has been referred to as "the greatest of all
English translations of the Bible."[13]  One commentator
opined that "[f]or centuries the King James Version was the
undisputed version of choice among English-speaking
Christians. … No one can dispute that the dominant English
translation of the Bible is the King James Version (KJV),
or as it is sometimes called, the Authorized Version."[14]
The Abbreviations Dictionary, p. 579 (10th ed. 2001)
identifies "KJ" as "*King James* (version of the Bible)."
(Emphasis in the original).[15]

The term "New King James Version" is merely
descriptive because it immediately conveys to consumers
that the product identified by the mark is a "new" or
modified version of the well-known King James Bible.  In
this regard, we note that the evidence of record shows that
"New King James Version" is a recognized term for a version
of the bible.  For example, *AcronymFinder.com* and the

---

[13] The Columbia Encyclopedia, "Bible" (6th ed. 2001-2007) attached
to the April 30, 2008 Office Action.
[14] Ronald Cammenga, "KJV vs. NIV" published in the
*GraceOnlineLibrary.org* website attached to the October 16, 2008
Office Action.
[15] April 30, 2008 Office Action.

*FreeDictionary.com* websites identifying NKJV as meaning "New King James Version," entries from the "Bible Versions" column in the Chick Publications website (*chick.com*), written by David W. Daniels, started with the question/statement "I know the New King James is said to be a 'revision of the King James,'" and Brent Kercheville in "My Top Bible Translations" in the *ChristianMonthlyStandard.com* website identifies the New King James Version (NKJV) as one of his top Bible translations.

C.   <u>Whether relevant consumers viewing NKJV in connection with bibles would recognize it as an abbreviation of the term "New King James Version"?</u>

The evidence of record supports a finding that consumers viewing the term NKJV used in connection with bibles would recognize that term as an abbreviation for "New King James Version."  As indicated in our discussion regarding whether NKJV is an abbreviation for the term "New King James Bible," entries from the *AcronymFinder.com* and the *FreeDictionary.com* websites identify NKJV as meaning "New King James Version" and many of the references submitted by the examining attorney identify different versions of the bible by acronyms or initials (*e.g.,* New King James Version (NKJV)).

Serial No. 76681269

In view of the foregoing, we find that the term NKJV is merely descriptive when used in connection with bibles. We have considered applicant's argument that NKJV is not merely descriptive because the NKJV Bible "is a product solely distributed by Applicant,"[16] but do not find it persuasive. The fact that no other competitor is using NKJV does not make it an inherently distinctive trademark when the only significance projected by the term is merely descriptive. *See In re Hunter Fan Co.,* 78 USPQ2d 1474, 1476 (TTAB 2006) ("a word need not be in common use in an industry to be descriptive, and the mere fact that an applicant is the first to use a descriptive term in connection with its goods, does not imbue the term with source-identifying significance"); *In re Alpha Analytics Investment Group LLC*, 62 USPQ2d 1852, 1856 (TTAB 2002).

Applicant also referenced three previously registered third-party marks comprising initials for bibles, Registration No. 2915872 for the mark NCV and Registration Nos. 2788296 and 1642753 for the mark NIV, as the basis for arguing that the descriptiveness refusal is not consistent with existing USPTO practice to register initials as trademarks for bibles.[17] Applicant only made reference to

---

[16] Applicant's Brief, p. 5.
[17] Applicant's Brief, p. 6.

16

these registrations in its December 11, 2008 response and later in its brief; applicant did not submit copies of the registrations. This is not the proper way to make such registrations of record. *See In re Volvo Cars of North America Inc.*, 46 USPQ2d 1455, 1456 n.2 (TTAB 1998). However, because the examining attorney did not advise applicant after receipt of the December 11, 2008 response that the mere listing of registrations was insufficient, when applicant still had an opportunity to cure the defect, we will consider the specific data provided by applicant. *In re 1st USA Realty Professionals, Inc.*, 84 USPQ2d 1581, 1583 (TTAB 2007).[18]

Third-party registrations are not conclusive on the question of descriptiveness. Each case must stand on its own merits, and a mark that is merely descriptive should not be registered on the Principal Register simply because

---

[18] We recognize the Federal Circuit exercised its discretion to take judicial notice of third-party registrations in an *ex parte* appeal. *In re Chippendales USA, Inc.*, 622 F.3d 1346, 96 USPQ2d 1681, 1688 (Fed. Cir. 2010). However, the Board's well-established practice is not to take judicial notice of third-party registrations, and we do not take judicial notice of third-party registrations here. Thus, to make a third-party registration of record, a copy of the registration, either a copy of the paper USPTO record, or a copy taken from the electronic records of the Office, should be submitted during prosecution/examination of the application. *In re Jump Designs LLC*, 80 USPQ2d 1370, 1372-73 (TTAB 2006); *In re Volvo Cars of North America Inc.*, 46 USPQ2d at 1456 n.2; *In re Duofold Inc.*, 184 USPQ 638, 640 (TTAB 1974).

other marks that share those characteristics appear on the register. *In re Scholastic Testing Service, Inc.*, 196 USPQ 517, 519 (TTAB 1977) ("we are not so much concerned with what has been registered, but rather what should or should not be registered"). The question of whether a mark is merely descriptive must be determined based on the evidence of record at the time registration is sought. *See In re Nett Designs Inc.*, 236 F.3d 1339, 57 USPQ2d 1564, 1566 (Fed. Cir. 2001); *In re Sun Microsystems Inc.*, 59 USPQ2d 1084, 1087 (TTAB 2001).

Thus, although we have considered the third-party registration to the extent indicated above, they do not rebut our finding that applicant's mark is merely descriptive.

### Whether NKJV Has Acquired Distinctiveness?

Applicant submitted the following evidence that its mark has acquired distinctiveness:

1. The declaration of applicant's Vice President and General Counsel attesting to applicant's substantially exclusive and continuous use of the mark NKJV for bibles since 1979;

2. The declaration of applicant's Vice President and General Counsel attesting to the following facts:

> a. Since 1986, applicant has generated almost $500 million dollars in sales from its NKJV bibles;
>
> b. Since 1986, applicant has sold over 62 million copies of its NKJV bible to approximately 25 million customers; and
>
> c. Since 1998, applicant has spent over $4 million dollars advertising its NKJV bibles;

3. Seven written statements from book retailers stating that they recognize NKJV as identifying the products of applicant;[19] and

4. Twenty-four written statements from "end customers" stating that they recognize NKJV as identifying the products of applicant.

In addition, as noted above, applicant claimed ownership of two registrations comprising in part the letters NKJV registered under Section 2(f) for bibles. While applicant did not argue, and we are not finding, that ownership of its prior registrations are *prima facie* evidence of acquired distinctiveness pursuant to Trademark Rule 2.41(b), the fact remains that applicant is the owner

---

[19] Statements from retailers, without regard to the perceptions of the ultimate consumers, have very little persuasive value because, while retailers know the source of the products they are buying, that knowledge is not transferable to end customers. *In re Semel,* 189 USPQ 285, 288 (TTAB 1975); *compare In re ic! Berlin GmbH,* 85 USPQ2d 2021, 2024 (TTAB 2008) (with respect to acquired distinctiveness for an earpiece for eyeglass frames, the Board gave some weight to declarations by opticians who stated that their customers "ask for applicant's eyewear by the earpiece design").

of the marks NKJV and design and NJKV NEW KING JAMES VERSION, in typed drawing form, for bibles registered under the provisions of Section 2(f). That the examining attorney did not address the probative value of applicant's prior registrations is puzzling especially because it was the examining attorney who brought the registrations to the applicant's attention and required applicant to claim ownership of them.

In view of the evidence of acquired distinctiveness submitted by applicant (*i.e.,* substantially exclusive and continuous use over a long period of time, substantial sales and advertising expenditures) as well as applicant's two previously registered marks, to hold that the initials NKJV has not acquired distinctiveness when the same term is the subject of two incontestable registrations under the provisions of Section 2(f) appears illogical on its face. Thus, under the facts before us, we find that the evidence of record is sufficient to support the finding that the mark NKJV mark used in connection with bibles has acquired distinctiveness.

*Decision*: The refusal under Section 2(e)(1) of the Trademark Act of 1946 on the ground that the mark is merely descriptive is affirmed; the refusal that the mark sought to be registered has not acquired distinctiveness pursuant

to Section 2(f) of the Trademark Act is reversed.  The

application will be published for opposition in due course.