THIS OPINION IS A
PRECEDENT OF THE TTAB

Hearing: April 22, 2014                                    Mailed: January 30, 2015

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

Trademark Trial and Appeal Board

_____

*In re Nieves & Nieves LLC*

_____

Serial No. 85179263

_____

Richard Mark Blank, counsel for Nieves & Nieves LLC.

Suzanne Blane, Trademark Examining Attorney, Law Office 114 (K. Margaret Le, Managing Attorney).

_____

Before Bucher, Zervas and Bergsman, Administrative Trademark Judges.

Opinion by Bergsman, Administrative Trademark Judge:

Nieves & Nieves LLC ("Applicant") filed an intent-to-use application to register the mark ROYAL KATE, in standard character form, for the following goods as amended:

> Cosmetics; fragrances; perfumes; skin care, namely, moisturizer, facial wash, and cleanser; nail polish; personal care products, namely, shampoo, body wash, conditioner, soap, shower gel, in Class 3;
>
> Watches; cufflinks; key fobs of precious metals; jewelry; jewelry boxes, in Class 14;
>
> Pouches, namely leather pouches, pouches for holding makeup, keys and other personal items; purses; handbags; pocketbooks; clutches; backpacks; book bags;

sports bags; bum bags; wallets; duffle bags; garment bags for travel; tote bags; shoulder bags; luggage; sack packs, namely, drawstring bags used as backpacks; evening handbags; evening bags; fashion handbags; gentleman's handbags; handbags for ladies; handbags for men; leather handbags; coin purses; key fobs; makeup cases sold empty; lipstick cases sold empty; hand mirror cases of leather; leather key chains; accessories, namely briefcases, attaché cases, in Class 18;

bedding, namely, bed sheets, pillow cases, blankets, down blankets, quilts, bed skirts, throw blankets, fitted sheets, pillow shams, bedspreads, bed covers, comforters, curtains, shower curtains; bed sheets; bath towels; towels, in Class 24; and

Apparel, namely, shirts, pants, dresses, skirts, gowns, party dresses, thongs, suits, ties, knits in the nature of sweaters and scarves, sweaters, robes, underwear, pajamas, leggings, scarves, gloves, outerwear in the nature of raincoats jackets blazers and down jackets, intimates in the nature of pajamas panties hosiery robes and bras, hosiery, lingerie, underwear, socks, sleepwear, athletic uniforms, jackets, cloths in the nature of pants shirts vests and shorts, tops, coats, neckties, bowties, raincoats, winter coats, leather jackets, caps, hats, derbies, felt hats, leather caps; wristbands; headbands; masks in the nature of sleep masks; facemasks; footwear, namely, athletic footwear, beach footwear, climbing footwear, flip flops, footwear for children, footwear for men, footwear for women, footwear for teens, footwear for men and women, dress footwear, pumps, high heel shoes, shoes, men's shoes, ladies shoes, work boots, hiking boots, snow boots, boots, sandals, sneakers, running shoes, slippers; belts; bibs not of paper; cloth diapers, in Class 25.

The application includes a statement that "the name(s), portrait(s), and/or signature(s) shown in the mark does not identify a particular living individual."

The Trademark Examining Attorney refused to register Applicant's mark under Section 2(a) of the Trademark Act of 1946, 15 U.S.C. § 1052(a), on the ground that

ROYAL KATE falsely suggests a connection with Catherine, Duchess of Cambridge, also known as Kate Middleton. The Trademark Examining Attorney also refused to register Applicant's mark under Section 2(c) of the Trademark Act, 15 U.S.C. § 1052(c), on the ground that ROYAL KATE consists of a name identifying a particular living individual whose written consent to register the mark is not of record.

## I.     Preliminary Issues

A.     Evidence attached to the briefs.

Both Applicant and the Trademark Examining Attorney attached evidence to their briefs. Applicant attached to one or both of its briefs a variety of website printouts, a dictionary.com definition for "royal" that was also included in the October 27, 2011 Office Action, and a listing of Google search results. The Examining Attorney attached two online dictionary definitions of "royal," both of which appear to be available in printed versions of dictionaries, and a printout of a Wikipedia entry for "Royal family."

In her responsive brief, the Trademark Examining Attorney did not object to the evidence attached to Applicant's main brief, nor did she reference that material. Applicant did not object to the evidence attached to the Trademark Examining Attorney's brief, nor did Applicant reference it in its reply brief.

Trademark Rule 2.142(d), 37 CFR § 2.142(d), provides that the record should be complete prior to the filing of an appeal.

> (d) The record in the application should be complete prior to the filing of an appeal. The Trademark Trial and Appeal Board will ordinarily not consider additional

> evidence filed with the Board by the appellant or by the examiner after the appeal is filed. After an appeal is filed, if the appellant or the examiner desires to introduce additional evidence, the appellant or the examiner may request the Board to suspend the appeal and to remand the application for further examination.

*Id. See also In re District of Columbia,* 101 USPQ2d 1588, 1591-92 (TTAB 2012) (third-party registrations submitted for first time with appeal brief are not considered); *In re Zanova Inc.,* 59 USPQ2d 1300, 1302 (TTAB 2001) ("By attempting to introduce evidence with its reply brief, applicant has effectively shielded this material from review and response by the Examining Attorney"; material submitted with reply brief not considered); *In re Styleclick.com Inc.,* 57 USPQ2d 1445, 1446 n.2 (TTAB 2000) (although applicant had properly submitted copies of third-party registrations, additional registrations listed in applicant's brief, which were not commented on by examining attorney in her brief, not considered); TMEP § 710.01(c) (2014) (the Board may consider evidence filed with applicant's brief if the examining attorney does not object to the evidence *and* the examining attorney discusses the evidence or otherwise treats it as being of record).

Because the dictionary definitions attached to the Examining Attorney's brief are the type of evidence of which the Board can take judicial notice, *see., e.g., In re White Jasmine LLC*, 106 USPQ2d 1385, 1392 n.23 (TTAB 2013); *Rocket Trademarks Pty. Ltd. v. Phard S.p.A.,* 98 USPQ2d 1066, 1075 n.17 (TTAB 2011); *Univ. of Notre Dame du Lac v. J.C. Gourmet Food Imp. Co.*, 213 USPQ 594 (TTAB 1982), *aff'd*, 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983), the Board does not

exclude them. None of the other evidence attached to the briefs has been considered unless it was made of record prior to the filing of the notice of appeal.

    B.    Evidence from foreign websites and publications.

Some of the articles the Trademark Examining Attorney put in the record came from websites, newspapers and magazines located outside of the United States. *See e.g.,* RoyalKateDebate.blogspot.com (England), News.com.au (Australia), Reuters UK edition (uk.reuters.com), BigPondNews.com (Australia), and NowMagazine.co.uk (UK) attached to the May 18, 2013 Office Action. *See also* LexisNexis articles from the Canwest News Service, Asian News International newswire, and Belfast Telegraph attached to the June 30, 2012 Office Action. We are cognizant that "[t]he probative value, if any, of foreign information sources must be evaluated on a case-by-case basis." *In re Bayer Aktiengesellschaft*, 488 F.3d 960, 82 USPQ2d 1828, 1835 (Fed. Cir. 2007). We find that the articles from non-U.S. publications have some probative value in this case because it concerns the perception of the general U.S. public—the relevant consumers of the goods in the application—regarding the identity of a celebrity who lives and travels outside of the United States. We think it likely that United States consumers interested in information about Kate Middleton and her activities would consult available English-language information sources about her, regardless of the geographic location of the information source. We think this is particularly true of someone using the Internet for information, given that official U.S. government data shows that three-quarters of Americans use the Internet and a majority of those users go online for news information. We take judicial notice of the following recent official

U.S. government publications concerning Internet use in the United States: (1) "Computer and Internet Use in the United States: 2013," U.S. Census Bureau (Nov. 2014), available on the www.census.gov website at the following link (last accessed 1/22/2015):

http://www.census.gov/content/dam/Census/library/publications/2014/acs/acs-28.pdf, and (2) "Exploring the Digital Nation America's Emerging Online Experience," National Telecommunications and Information Administration and Economics and Statistics Administration (June 2013), available at the following link (last accessed 1/22/2015)

http://www.ntia.doc.gov/files/ntia/publications/exploring_the_digital_nation_-_americas_emerging_online_experience.pdf. According to the Census Bureau report, 74.4% of U.S. households reported Internet use in 2013. According to the NTIA report, 56% of Internet users in 2011 went online to obtain news or other information, with 22% using the Internet as their primary information source. Although we find the non-U.S. articles in the record to have some probative value in this case, we add that our decision would be the same if we did not consider them.

II. Whether ROYAL KATE Falsely
Suggests a Connection with Kate Middleton?

To determine whether Applicant's ROYAL KATE mark falsely suggests a connection with Kate Middleton under Section 2(a), the Board analyzes whether the evidence of record satisfies the following four-part test:

(1)    Whether Applicant's mark ROYAL KATE is the same as or a close approximation of Kate Middleton's previously used name or identity;

(2) Whether Applicant's mark ROYAL KATE would be recognized as such by purchasers, in that the mark points uniquely and unmistakably to Kate Middleton;

(3) Whether Kate Middleton is not connected with the goods that will be sold by Applicant under its mark; and

(4) Whether Kate Middleton's name or identity is of sufficient fame or reputation that when Applicant's mark is used on Applicant's goods, a connection with Kate Middleton would be presumed.

*See In re Pedersen,* 109 USPQ2d 1185, 1188 (TTAB 2013); *In re Jackson Int'l Trading Co.,* 103 USPQ2d 1417, 1419 (TTAB 2012). *See also Univ. of Notre Dame du Lac v. J.C. Gourmet Food Imports Co.,* 703 F.2d 1372, 217 USPQ 505, 509 (Fed. Cir. 1983) (hereinafter "*Notre Dame*"); *Bd. of Trs. of Univ. of Ala. v. Pitts*, 107 USPQ2d 2001, 2025 (TTAB 2013) (hereinafter "*Pitts*").

A. Whether Applicant's mark ROYAL KATE is the same as or a close approximation of the name or identity of Kate Middleton?

Applicant argues that ROYAL KATE is not a close approximation of Kate Middleton's previously-used name or identity because there is no evidence that Kate Middleton herself used ROYAL KATE as her name or identity. and because Kate Middleton is not officially a "royal."[1] Specifically, Applicant contends as follows:

---

[1] "Royal" is defined, *inter alia*, as "of or pertaining to a king, queen, other sovereign" and informally as "a royal person; member of the royalty," or "a member of England's royal family." **THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE (UNABRIDGED)**, p. 1677 (2nd ed. 1977). The Board may take judicial notice of dictionary definitions. , *Univ. of Notre Dame du Lac v. J.C. Gourmet Food Imp. Co.*, 213 USPQ 594 (TTAB 1982), *aff'd*, 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983). *See also* Dictionary.com attached to the October 27, 2011 Office Action.

> Although some may argue that ROYAL KATE may be reasonably understood as referring to Kate Middleton, Duchess of Cambridge, by some persons, it is not a close approximation of her name because ROYAL is not part of Middleton's name or title.[2]

We reject Applicant's interpretation of the first prong of the test as inappropriately narrowing the scope of Section 2(a). The creation of a false suggestion of a connection results from an applicant's use of something that is closely "associated with a particular personality or 'persona'" of someone other than the applicant. *Notre Dame*, 217 USPQ at 509; *see also Pitts*, 107 USPQ2d at 2024. The reason for the statutory prohibition is that the person identified loses the right to control his/her identity. *Notre Dame*, 217 USPQ at 509 ("There may be no likelihood of such confusion as to the source of goods even under a theory of "sponsorship" or "endorsement," and, nevertheless, one's right of privacy, or the related right of publicity, may be violated.").

The statutory false suggestion of a connection refusal emerged from the right to privacy and right of publicity.

> Evolving out of the rights of privacy and publicity, the false suggestion of a connection under § 2(a) of the Trademark Act was intended to preclude registration of a mark which conflicts with another's rights, even though not founded on the familiar test of likelihood of confusion. [*Notre Dame* 217 USPQ at 509. An opposer may prevail on the false suggestion of a connection ground when its right to control the use of its identity is violated, even if the name claimed to be appropriated was never commercially exploited by the opposer as a trademark or in a manner analogous to trademark use. *See Notre Dame*, 703 F.2d at 1375, 217 USPQ at 508; *Buffett*, 226 USPQ at 429. *However, while a party's interest in its identity does not depend for its existence on the adoption and use of a technical*

---

[2] Applicant's Brief, p. 2.

> *trademark, a party must nevertheless have a protectable interest in a name (or its equivalent). Thus, we focus on the key factor in the false suggestion analysis for this case: whether applicants' mark is a close approximation of opposers' name or identity, i.e., a right in which opposers possess a protectable interest.*

*Pitts*, 107 USPQ2d at 2025 (emphasis supplied).

The right of publicity has developed to protect the commercial interest of celebrities in their identities. Under this right, the celebrity has an interest that may be protected from the unauthorized commercial exploitation of that identity. If the celebrity's identity is commercially exploited without the consent of the celebrity, there has been an invasion of his/her right, regardless of whether his/her "name or likeness" is used. *Cf. Carson v. Here's Johnny Portable Toilets, Inc.*, 698 F.2d 831, 218 USPQ 1, 4 (6th Cir. 1983) (former late night television personality Johnny Carson's identity may be exploited even if his name or likeness is not used).

The evidence reflects that Kate Middleton is a celebrity. That means her identity has value which the § 2(a) false suggestion refusal is intended to protect. *See Notre Dame*, 217 USPQ at 509 ("It is a right of this nature [that is, the right to privacy or right to publicity], a right to control the use of one's identity, which the University also asserts under § 2(a)."). Therefore, it is the right of publicity basis for the false suggestion of a connection refusal that applies in this case.

The fact that Kate Middleton, the Duchess of Cambridge, has never used ROYAL KATE as her name or identity does not obviate the false suggestion of a connection refusal. A term may be considered the identity of a person even if his or her name or likeness is not used. All that is required is that the mark sought to be

registered clearly identifies a specific person (*i.e.,* Kate Middleton). Thus, in *Pitts,* although neither the University of Alabama nor Coach Paul Bryant ever used HOUNDSTOOTH or HOUNDSTOOTH MAFIA as a trademark, trade name or any other type of identifier, the Board did not view that circumstance as automatically negating the issue of whether HOUNDSTOOTH MAFIA nevertheless created a false suggestion of a connection with Paul Bryant. 107 USPQ2d at 2025 ("Because 'houndstooth' and 'houndstooth mafia' are not the 'names' of either opposer or Coach Bryant, we consider whether applicants' mark [HOUNDSTOOTH MAFIA and design] is the same as or a close approximation of their 'identity.'"). *See also In re Urbano*, 51 USPQ2d 1776, 1779 (TTAB 1999) ("[W]hile the general public in the United States may or may not have seen the upcoming Olympic games referred to precisely as 'Sydney 2000,' we have no doubt that the general public in the United States would recognize this phrase as referring unambiguously to the upcoming Olympic Games in Sydney, Australia, in the year 2000.").

We take this opportunity to make explicit what was implicit in our prior decisions in *Pitts* and *In re Urbano*, 51 USPQ2d 1776 (TTAB 1999): the first prong of the false suggestion of a connection test inquires into whether applicant's mark is the same as or a close approximation of the name or identity of a particular person other than the applicant, whether or not the person actually "used" the name or identity himself or herself. *Notre Dame*, 217 USPQ at 509 ("[T]he initial and critical requirement is that the name (or an equivalent thereof) claimed to be appropriated by another must be unmistakably associated with a particular personality or 'persona.'"). Therefore, in this case, we examine the evidence of record to determine

whether it establishes that Applicant's mark ROYAL KATE would be understood by the relevant public as identifying Kate Middleton.

As noted above, the term "royal" refers to a member of the England's royal family. The mark ROYAL KATE creates a commercial impression that references Kate Middleton as a member of the royal family. This is corroborated by articles in the media referencing Kate Middleton as a "royal." *See for example,* an article posted on the April 14, 2013 CNBC website (cnbc.com) with the headline "Can Kate Middleton Give Carnival a Royal Boost?" and subsequently reports that "[t]he cruise line's Princess division has asked British Royal Kate Middleton to be the 'godmother' to its newest ship, The Royal Princess"; an article posted on the May 17, 2012 CNN website (cnn.com) with the headline "Palace: Kate has graduated as 'fully fledged' royal"; and a video posted on the NBC website (nbc.com) with the headline "Now A Seasoned Royal, Kate Prepares For Motherhood."[3]

In fact, Kate Middleton is referred to as "Her Royal Highness." Applicant submitted an excerpt from "The official website of The British Monarchy" (royal.gov.uk) which references Kate Middleton as "her Royal Highness."[4] *See also*

> *The Washington Post* (April 29, 2011) (washingtonpost.com)
>
> Duchess of Cambridge: Is Kate a Princess or not
>
> Queen Elizabeth II conferred among Prince William and Kate Middleton the new titles of William, Duke of Cambridge, Catherine, Her Royal Highness the Duchess of Cambridge.[5]

---

[3] May 18, 2013 Office Action.

[4] April 26, 2012 response to Office Action.

[5] April 26, 2012 response to Office Action.

*The Hollywood Reporter* (April 29, 2011) (hollywoodreporter.com)

Kate Middleton Will Not Be Called Princess

She'll go by "Her Royal Highness the Duchess of Cambridge" until her father-in-law, Prince Charles, becomes King.[6]

The Trademark Examining Attorney submitted numerous examples of media coverage referring to Kate Middleton as ROYAL KATE. The articles are listed below:

1.      October 27, 2011 Office Action.

*The Philadelphia Inquirer* (April 28, 2011)

Kate Middleton: I'm not THAT Kate! Kate Middleton wants The News Media to leave her alone. That'd be Boston's Kate Middleton, inundated with inane requests to mimic the Royal Kate on-camera. I'm not really interested in pretending I'm the other Kate," says Kate, 32, who works at a bicycle shop in Concord, Mass.

——

From Berkshire to Buckingham website (fromberkshire tobuckingham.com) (October 14, 2011)

Daring Dress for Royal Kate

——

Bloomberg.com (May 31, 2011)

Royal Kate Leads Way With Sapphire Ring

… The colored-stone trend got a lift with singer Jessica Simpson's ruby-and-diamond combination and royal bride Kate Middleton's sapphire-and-diamond ring.

——

Wig-city.com

---

[6] April 26, 2012 response to Office Action.

Costume Wigs

New Royal Kate

Details:

William's brunette bride, new girl in palace

———

Reuters U.S. edition (reuters.com) (December 28, 2010)

UK tourists will have to wait for royal Kate

She may marry into Britain's royal family in April, but Prince William's fiancee Kate Middleton will not take her place alongside the royals at Madame Tussauds until later in 2011.

———

Bonanza.com website

Royal Kate Middleton Inspired Halo Tiara for Quinceanera

———

InstantMoney.com

Instant Money Articles Directory

Scented Candles loved by Royal Kate Middleton (Posted in Architecture and Interior Design).

———

Wedding & Bridal Collection website posted at newcir.com

Beautiful wedding hairstyles to inspire you for your wedding >> Royal Kate Wedding hairstyle

———

KateMiddleton.com

Everything Kate Middleton and the Royal Wedding

Kate Has a Fan in Kate

Kate Moss has offered her opinion of the Duchess of Cambridge, stating that the Royal Kate displayed the attributes of catwalk queen on her wedding day.

"She was so chic and seamless," Moss tells *The Daily Telegraph,* "And just beautiful. It was just as a royal wedding should be."

2.     May 18, 2013 Office Action

A search for "Royal Kate" on the GOOGLE search engine retrieved photographs of Kate Middleton.

——

The PINTEREST entry for ROYAL KATE retrieved photographs of Kate Middleton.[7]

——

Reuters U.S. edition (reuters.com) (January 11, 2013)

Smile or grimace? Royal Kate portrait splits opinion

The first official portrait of Britain's Duchess of Cambridge, popularly known by her former name Kate Middleton, was unveiled in London on Friday, and opinion was sharply divided over an image many deemed unflattering.

——

Mobile.twitter.com

The posting features "The Royal Kate Blog" (@theroyalkate) where people "tweet" about Kate Middleton.

——

9News.com (Colorado)

Snooki Offers Mommy Tips to Royal Kate Middleton

---

[7] Pinterest is an online pinboard.

Reality TV celebrity Nicole "Snooki" Polizzi is offering parenting tips for mom-to-be Kate Middleton. Jen Markham tells us what the Jersey Shore star and the Duchess of Cambridge have in common.

———

WUSA.com (Washington, D.C.)

Royal Kate's portrait Unveiled in London

Britain's Duchess of Cambridge is said to be "delighted" with her first official painted portrait, which has gone on display in London.

———

News10.net (Sacramento, California)

British Royal Kate Visits the Natural History Museum

Prince William's wife Kate gets a tour of Britain's pioneering past in the field of natural history as she opens a new museum gallery in London.

———

14U News (14u.com)

Two charged over stolen pics of royal Kate

Two people were charged this month over the publication in September of stolen photos of Prince William's wife Catherine that caused a huge furore [sic], sources say.

———

The Raw Story website (rawstory.com)

Hospital treating royal Kate's pregnancy admits to hoax call from Australian radio station (December 5, 2012)

…

Pregnant royal Kate leaves hospital after four days (December 6, 2012)

———

On.Aol.com/video

"Hugely Excited" Royal Kate Give [sic] First Foreign Speech

———

UPI.com (January 29, 2012)

Royal Kate to begin public role

This evidence is sufficient to establish that the mark ROYAL KATE is a close approximation of the identity of Kate Middleton because American media uses the term ROYAL KATE to identify Kate Middleton and, therefore, the American public receives media reports identifying Kate Middleton as ROYAL KATE. In fact, because the American public receives reports that Kate Middleton will be referred to as Her Royal Highness the Duchess of Cambridge, there is a natural association between the mark ROYAL KATE and Kate Middleton regardless of whether she uses that moniker herself. *See Bd. of Trustees of the Univ. of Ala. v. BAMA-Werke Curt Baumann*, 231 USPQ 408 (TTAB 1986) ("BAMA" uniquely pointed to the identity of the University of Alabama even though the school had not adopted it as a trademark and had only sporadically referred to itself as BAMA, in large part due to the public's association of the term with the school).

Applicant argues that Kate Middleton must use the name ROYAL KATE as her identity to meet the first prong of the Section 2(a) false suggestion of a connection test.[8] We rejected this argument earlier in this decision by holding that the first prong of the false suggestion of a connection test is more accurately set forth as

---

[8] Applicant's Brief, pp. 1-2.

whether applicant's mark is the same as or a close approximation of the name or identity of a particular person other than the applicant. We therefore find that the Applicant has not rebutted the showing that the Examining Attorney has made that the mark ROYAL KATE is a close approximation of the identity of Kate Middleton.

B.     Whether Applicant's mark ROYAL KATE would be recognized as a close approximation of Kate Middleton's identity by purchasers, in that the mark points uniquely and unmistakably to Kate Middleton?

Applicant is seeking to register its mark for fashion products such as cosmetics, jewelry, handbags, bedding and clothing and Applicant characterized these products as "luxury items and home goods."[9] The goods and services themselves serve, if anything, to reinforce that the Mark uniquely and unmistakably points to Kate Middleton. Kate Middleton, by virtue of her being a member of the British Royal family and wife of Prince William, the second in line to the English throne, has become a fashion trendsetter. As the evidence establishes, the media reports what she is wearing, where she goes and what she purchases. *See for example,* the following evidence attached to the May 18, 2013 Office Action:

> Reuters U.S. Edition (reuters.com) (January 11, 2013)
>
> Smile or grimace? Royal Kate portrait splits opinion
>
> … The 31-year-old, who as a glamorous future queen is one of the world's most photographed women, is portrayed in the large canvas with a faint smile, long, copper-tinted hair and a shadow under her eyes.
>
> ———
>
> CNBC website (cnbc.com) (April 14, 2013)
>
> Can Kate Middleton Give Carnival a Royal Boost?

---

[9] Applicant's Brief, p. 2.

17

Carnival's stock is struggling to keep afloat following a spate of mishaps with its cruise ships, but the company is hoping for a royal livesaver [sic] to boost its reputation – and its business.

The cruise line's Princess division has asked British Royal Kate Middleton to be the 'godmother' to its newest ship, The Royal Princess. Middleton, who is not being compensated for the use of her name and fame, will attend the ship's naming ceremony in Southampton, England, in June to christen the 141,000-ton ship.

\* \* \*

"We think Kate is well-liked by most consumers though, and could bring some positive headlines to press regarding Carnival after a plethora of headline news that has portrayed the company in a negative light."

___

14U News (14u.com) (noted above)

At the end of the featured article about the stolen photographs of Kate Middleton, there are links to numerous stories about Kate Middleton, including "Kate shops – and Snacks – in London," "Pregnant Kate Middleton Shops for Home Furnishings," "Kate Middleton's Pregnancy Style: All About Her Favorite Designers," and "Duchess Kate 'style icon for most women." The last article reports that "The Duchess of Cambridge has topped a poll of celebs that ladies most like to copy."

___

CNN.com (May 3, 2012)

Kate Inc.: A corporate approach to royal success

"The Duchess of Cambridge is one of the world's biggest, if not the biggest, stars right now."

\* \* \*

Kate's composure is also down to the fact that she feels comfortable with her appearance.

18

> She buys most of her outfits herself in regular stores such as Zara, LK Bennett and Reiss. She occasionally visits upscale stores like Burberry and Amanda Wakeley but usually arrives unannounced. Often, the first a designer hears that the duchess has bought an outfit is when she appears in public wearing it.
>
> Surprisingly, her outfits are often from previous seasons and the duchess isn't averse to bringing out old favorites.
>
> Kate isn't a fashion icon, even if she does have a huge impact on sales, but she does have an uncanny ability to pick something that suits her and the occasion. She knows how to make herself feel comfortable.
>
> *     *     *
>
> The royal source says that she is aware of her stardom and that it stems partly from Diana's legacy. She takes the comparison to Diana as a "compliment" but is clearly doing things her own way.
>
> ___
>
> UPI.com (January 29, 2012) (noted above)
>
> At the end of the article, there are links to other fashion related articles about Kate Middleton such as "Duchess wears McQueen in Birmingham," "Duchess Kate wore $675 wedding hat," and "Kate spotted wearing Lady Di's earrings."

These references demonstrate the media spotlight under which Kate Middleton lives and that relevant consumers will recognize the name ROYAL KATE as pointing uniquely and unmistakably to Kate Middleton.

Applicant again argues that because Kate Middleton never used ROYAL KATE to identify herself, the name ROYAL KATE does not point uniquely and

unmistakably to Kate Middleton.[10] Specifically, Applicant makes the following argument:

> When used in conjunction with Middleton, the word "royal" is used as a description, not a title. She was never referred to as ROYAL KATE in the same way her husband would be referred to as Prince William. … ROYAL KATE is not an identity in the same way "Princess Diana" or "President Obama" would be.[11]

This argument flies in the face of the evidence. As noted above, Kate Middleton, the wife of Prince William, is a public figure. CNN.com (May 3, 2012) reported that she is "one of the world's biggest, if not the biggest, stars right now,"[12] and Reuters reported that she is "one of the world's most photographed women."[13] Kate Middleton has become a fashion trend-setter by virtue of who she is. When the name ROYAL KATE is used in connection with consumer products, including fashion products, the relevant consumers perceive ROYAL KATE as pointing uniquely and unmistakably to Kate Middleton. As noted above, Kate Middleton is referred to as "Her Royal Highness." Applicant has not come forward with any evidence that the name ROYAL KATE refers to anyone other than Kate Middleton.

---

[10] Applicant's Brief, p. 3.

[11] *Id.*

[12] May 18, 2013 Office Action.

[13] *Id.*

C.      Whether Kate Middleton is connected with the goods that are sold or will be sold by Applicant under its mark?

Applicant acknowledges that Kate Middleton is not connected with the goods that are or will be sold by Applicant under the mark ROYAL KATE, and that Kate Middleton has not consented to Applicant's use of her persona.[14]

D.      Whether Kate Middleton's name or identity is of sufficient fame or reputation that when Applicant's mark ROYAL KATE is used on Applicant's goods, a connection with Kate Middleton would be presumed?

The evidence shows that Kate Middleton is a member of the British Royal Family who is referred to as "Her Royal Highness." Also, the evidence shows that she is the subject of great public interest in the United States and throughout the world. When she appears in public, the media regularly reports on the clothes she wears, what she does and what she buys. The evidence discussed in Section B, particularly the Reuters website that identified Kate Middleton as "one of the world's most photographed women," the CNN.com article that described Kate Middleton as "one of the world's biggest, if not the biggest, stars," and the CNBC.com posting that Carnival Cruise Lines wants to use Kate Middleton's "name and fame" to boost its stock, demonstrates that Kate Middleton's identity is of sufficient renown that when Applicant's mark ROYAL KATE is used in connection with Applicant's goods, a connection with Kate Middleton will be presumed.

"Applicant does not dispute that Catherine, Duchess of Cambridge, is a well-known figure, stemming from her well-publicized relationship with Prince William

---

[14] Applicant's Brief, p. 4.

and her subsequent wedding."[15] "Also, the Applicant does not dispute the … claim that Kate Middleton's fame is not temporary."[16] However, Applicant argues that "while the Duchess of Cambridge is well-known, there is no evidence of a presumptive connection between Catherine and the specific goods upon which Applicant's mark will be used. Simply because Catherine is believed to have style and good taste does not mean that she is publicly perceived to be involved in the industry at all."[17] We do not require proof that Kate Middleton is well-known for cosmetics, jewelry, handbags, bedding and clothing. Our inquiry is whether Kate Middleton's renown is such that when the mark ROYAL KATE is used with those products, consumers will recognize ROYAL KATE as referring to Kate Middleton such that a connection with Kate Middleton will be presumed. As the Board held in *In re Pedersen,* 109 USPQ2d 1185, 1202 (TTAB 2013):

> [T]he key is whether the name *per se* is unmistakably associated with a particular person or institution and, as used would point uniquely to the person or institution. In short, it is the combination of: (1) a name of sufficient fame or reputation and (2) its use on or in connection with particular goods or services, that would point uniquely to a particular person or institution. [Internal citation omitted]. Thus, our inquiry is whether consumers of medicinal herbal remedies would think only of the Lakota tribes when the LAKOTA name is used on such goods. *Cf. Notre Dame*, 217 USPQ 509 ("'Notre Dame' is not a name solely associated with the University. It serves to identify a famous and sacred religious figure and is used in the names of churches dedicated to Notre Dame, such as the Cathedral of Notre Dame in Paris.").

---

[15] Applicant's Brief, p. 4.

[16] *Id.* at page 6.

[17] Applicant's Brief, p. 4.

The record before us amply demonstrates the fame of Kate Middleton who is referred to as Royal Kate. Additionally, the evidence establishes that her reputation is in part as a fashion trendsetter and is of such a nature that a connection with cosmetics, jewelry, handbags, bedding and clothing would be presumed when Applicant's mark ROYAL KATE is used on such goods. In view thereof, we find that Kate Middleton's identity is of sufficient fame or reputation that when Applicant's mark ROYAL KATE is used on Applicant's goods, a connection with Kate Middleton will be presumed.

E.    Analyzing the factors.

Considering all of the evidence in the record before us, we find that (i) Applicant's proposed mark ROYAL KATE is a close approximation of Kate Middleton's identity, (ii) the mark ROYAL KATE points uniquely and unmistakably to Kate Middleton, (iii) Kate Middleton has no connection with Applicant, and (iv) Kate Middleton's identity is of sufficient fame or reputation that if Applicant's mark ROYAL KATE were used in connection with the goods listed in the application a connection with Kate Middleton would be presumed. Therefore, we find that Applicant's mark ROYAL KATE for the goods listed in the application falsely suggests a connection with Kate Middleton.

III.    Whether the mark ROYAL KATE identifies a particular living individual whose written consent to register the mark is not of record?

Section 2(c) of the Trademark Act, 15 U.S.C. § 1052(c) provides the following:

> No trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it ... (c) Consists of or comprises a name,

> portrait, or signature identifying a particular living individual except by his written consent, or the name, signature, or portrait of a deceased President of the United States during the life of his widow, if any, except by the written consent of the widow.

The purpose of requiring the consent of a living individual to the registration of his or her name, signature, or portrait is to protect rights of privacy and publicity that living persons have in the designations that identify them. *In re Hoefflin*, 97 USPQ2d 1174, 1176 (TTAB 2010); *Martin v. Carter Hawley Hale Stores, Inc.*, 206 USPQ 931, 933 (TTAB 1979) (Section 2(c) was designed "to protect one who, for valid reasons, could expect to suffer damage from another's trademark use of his name."). *See also Notre Dame*, 217 USPQ at 509 n.8; *Canovas v. Venezia 80 S.R.L.*, 220 USPQ at 661.

Whether consent to registration is required depends on whether the public would recognize and understand the mark as identifying a particular living individual. A consent is required only if the individual bearing the name in the mark will be associated with the mark as used on the goods or services, either because: (1) the person is so well known that the public would reasonably assume a connection between the person and the goods or services; or (2) the individual is publicly connected with the business in which the mark is used. *See In re Hoefflin*, 97 USPQ2d at 1175-76; *Krause v. Krause Publ'ns, Inc.*, 76 USPQ2d 1904, 1909-10 (TTAB 2005); *In re Sauer*, 27 USPQ2d 1073, 1075 (TTAB 1993), *aff'd per curiam*, 26 F.3d 140 (Fed. Cir. 1994); *Carter Hawley Hale Stores*, 206 USPQ at 933.

For purposes of Section 2(c), a "name" does not have to be the full name of an individual. Section 2(c) applies not only to full names, but also first names,

surnames, shortened names, pseudonyms, stage names, titles, or nicknames, if there is evidence that *the name identifies a specific living individual* who is publicly connected with the business in which the mark is used, or *who is so well known that such a connection would be assumed. See In re Hoefflin*, 97 USPQ2d at 1177-78 (holding registration of the marks OBAMA PAJAMA, OBAMA BAHAMA PAJAMAS, and BARACK'S JOCKS DRESS TO THE LEFT barred under Section 2(c) in the absence of consent to register, because they create a direct association with President Barack Obama); *Krause v. Krause Publ'ns, Inc.*, 76 USPQ2d at 1909 ("the mark KRAUSE PUBLICATIONS, although it includes only the surname of petitioner, would fall within the provisions of Section 2(c) if petitioner establishes that KRAUSE, as used on or in connection with the goods or services set forth in the involved registration, points uniquely to him 'as a particular living individual.'"); *In re Sauer,* 27 USPQ2d at 1074-75 (holding registration of a mark containing BO, used in connection with a sports ball, barred under Section 2(c) in the absence of consent to register, because BO is the nickname of a well-known athlete and thus use of the mark would lead to the assumption that he was associated with the goods); *John Anthony, Inc. v. Fashions by John Anthony, Inc.,* 209 USPQ 517, 525 (TTAB 1980) ("when a name or pseudonym has come to be recognized in a certain field of business as identifying a particular living individual, the individual possesses a valuable property right in that name, and the courts will not allow the name to be appropriated or commercially exploited by another without his consent.").

*In re Steak & Ale Rest. of Am., Inc.*, 185 USPQ 447, 448 (TTAB 1975) is particularly analogous to the present case. In that decision, the Board affirmed a Section 2(c) refusal of the mark PRINCE CHARLES because the wording identifies a particular well-known living individual whose consent was not of record. The Board reasoned that "the addition of a given name or a surname to the word 'PRINCE' could well serve as a name or 'nickname' for a particular living individual who could be identified and referred to in the various walks of life with this appellation." We find that this same logic applies to the mark ROYAL KATE. *Cf. Ceccato v. Manifattura Lane Gaetano Marzotto & Figli S.p.A.,* 32 USPQ2d 1192, 1196 (TTAB 1994) (evidence shows that "Duca D'Aosta" is a title and does not refer "unequivocally to a particular living individual.")

While with lesser-known figures there may have to be evidence showing that the consuming public connects them with the manufacturing or marketing of the goods at issue, well-known individuals such as celebrities and world-famous political figures are entitled to the protection of Section 2(c) without having to demonstrate a connection with the involved goods or services. *See In re Hoefflin*, 97 USPQ2d at 1177 (because Barack Obama is the President of the United States, the purchasing public will reasonably assume that marks consisting of the names BARACK and OBAMA identify President Barack Obama); *In re Masucci*, 179 USPQ 829, 830 (TTAB 1973) (in spite of any common law rights applicant may have, EISENHOWER for greeting cards was refused on the ground that it consisted of the name of the late President Eisenhower during the life of his widow, and application for registration was filed without her consent).

As we found in the previous section, ROYAL KATE identifies Kate Middleton whose identity is renowned. By any measure, she is a celebrity, and thus the term ROYAL KATE points uniquely and unmistakably to Kate Middleton. Although Kate Middleton, the Duchess of Cambridge, does not use the name ROYAL KATE, it has become an expression used by the American public (and media) to identify her. We find that the mark ROYAL KATE is the name of a particular living individual, namely, Kate Middleton, and because Kate Middleton has not consented to the use and registration of that name, the Section 2(c) refusal is affirmed.

***Decision***: The refusals to register under Section 2(a) & (c) are affirmed.